UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

SHAKIRA LESLIE; and SHAMILL BURGOS; on
behalf of themselves and all others similarly situated,

                                  Plaintiffs,

v.

CITY OF NEW YORK; KEECHANT SEWELL, Police
Commissioner for the City of New York, in her official
capacity; KENNETH COREY, Chief of Department for
the New York City Police Department, in his official
capacity; JAMES ESSIG, Chief of Detectives for the
New York City Police Department, in his official
capacity; EMANUEL KATRANAKIS, Deputy Chief in
the Forensic Investigations Division of the New York
City Police Department, in his official capacity; and DR.
JASON GRAHAM, Acting Chief Medical Examiner for
the City of New York, in his official capacity;

                                  Defendants.

DECLARATION

22 cv 02305 (NRB)

------------------------------------------------------------------ X

       MELANIE L. RIOS, affirms the following, pursuant to 28 U.S.C. § 1746:

1.      I am Special Counsel, and of counsel to the New York City Office of Chief Medical Examiner ("the OCME"), and work in the OCME's Legal Department. I submit this declaration in support of Defendants' motion to dismiss the complaint in the above-captioned case.

2.      The statements in this declaration are based on my personal knowledge, discussions with staff of the OCME and my review of the records maintained in the regular course of business by the OCME.

DNA Records

3.      Records of the Department of Forensic Biology laboratory ("DNA laboratory") are released by the OCME pursuant to the requirements of N.Y. Criminal Procedure Law Article 245, N.Y. Executive Law 995-d. Records are released by court-ordered subpoena, to relevant parties

in a criminal or civil lawsuit, or at the determination of the Legal Department, etc.[1] In particular, Criminal Procedure Law § 245.20, which is titled "Automatic Disclosure," requires the disclosure to defense counsel of records relating to "scientific tests or experiments or comparisons, relating to the criminal action or proceeding which were made by or at the request or direction of a public servant engaged in law enforcement activity...." N.Y. Crim. Proc. Law § 245.20(1)(j) and § 245.10(a)(i),(ii) sets out the time deadlines for this disclosure.

4. N.Y. Executive Law § 995-d(2) specifies when records, findings, reports, and results of DNA testing, other than a DNA record maintained in the New York State DNA Index System ("SDIS"), such as the OCME's Local DNA Index System ("LDIS"), may be disclosed.[2] Subsection (2) states that these records may disclosed in a criminal proceeding to "the court, the prosecution, and defense."[3]

5. N.Y. Executive Law § 995-d(1) specifies who is not entitled to the "records, findings, reports, and results of DNA testing," specifically: "insurance companies, employers or potential employers, health providers, employment screening or personnel companies, agencies, or services, [and] private investigation services."[4]

6. Final DNA reports are released to the prosecuting or law enforcement agency upon request, where there is a pending criminal case or investigation. Forensic Biology case files are generally only released to the prosecuting agency, unless the file is requested by a defense attorney for

---

[1] *See* Forensic Biology Administrative Manual, Attorney/Customer Requests, https://www1.nyc.gov/assets/ocme/downloads/pdf/technical-manuals/forensic-biology-technical-manuals/attorney_requests_061821.pdf (last visited July 3, 2022).
[2] *See* N.Y. Executive Law § 995-d(2).
[3] *Id.*
[4] *See* N.Y. Executive Law § 995-d(1).

purposes of filing a criminal appeal. An individual may request a copy of their own Forensic Biology suspect or case file through a Freedom of Information Law request.[5]

7. After DNA analysis of an individual's DNA is completed, a DNA profile is uploaded into the "Subject Index" of the OCME's LDIS, unless there is a protective order issued by a court that limits comparison of this DNA profile to certain evidence or prohibits upload to LDIS.[6] Profiles are issued a specific specimen identification number.[7] The DNA profile is then compared to the other DNA profiles in LDIS on an on-going basis to determine if there are any matches. Evidence items retained for long-term storage, e.g., victim exemplars from sexual assault evidence kits, must be properly sealed and their storage location documented in the Chain of Custody of the case.[8]

8. When a DNA profile uploaded into LDIS results in a match, the OCME releases a "HIT" notification to the relevant NYPD and/or District Attorney's office liaison, so that these agencies may use this information in connection with criminal investigations and prosecutions.[9] The DNA HIT entry must be reviewed internally before it is sent to these outside agencies. The HIT notification that is sent by OCME contains limited information in that it only advises that there

---

[5] The Legal Department will review the file to determine whether the contents of the file may be released pursuant to the N.Y. Public Officers Law § 87 and 89.

[6] *See* Forensic Biology Administrative Manual, Attorney/Customer Requests, at 11.4, https://www1.nyc.gov/assets/ocme/downloads/pdf/technical-manuals/forensic-biology-technical-manuals/attorney_requests_061821.pdf (last visited July 5, 2022).
*See id.*, at 11.5.

[7] *See* Forensic Biology CODIS Manual, CODIS Profile Management, https://www1.nyc.gov/assets/ocme/downloads/pdf/technical-manuals/forensic-biology-technical-manuals/profile_management_042622.pdf (last visited July 7, 2022).

[8] *See* Forensic Biology Evidence and Case Management Manual, Evidence Control, at 9.2, https://www1.nyc.gov/assets/ocme/downloads/pdf/technical-manuals/forensic-biology-technical-manuals/evidence_control_120821.pdf (last visited July 7, 2022).

[9] *See* Forensic Biology CODIS Manual, Verifying and Reporting DNA Matches, https://www1.nyc.gov/assets/ocme/downloads/pdf/technical-manuals/forensic-biology-technical-manuals/verifying_and_reporting_dna_matches_060322.pdf (last visited July 7, 2022).

was a match.[10] The OCME does not attach related DNA records or the DNA profile itself.[11] DNA HITs are only issued for single-source DNA profiles.[12]

Ceasing Comparison of an Individual's DNA Profile and Removal from the Database

9.  Since 2020, OCME prominently displays on its public website a statement that members of the public may submit a form to the OCME to inquire as to whether their DNA profile is uploaded into LDIS.[13] There is a link to the online form. The completed form is submitted directly to the OCME's Legal Department, which reviews the form and then informs the individual or his/her inquiring attorney whether the individual's DNA profile is in LDIS.

10. There are several ways that removal of an individual's DNA profile from LDIS can be accomplished. First, attorneys may submit an expungement court order to the OCME on behalf of their client, which specifically orders the OCME to remove the client's DNA profile from LDIS.[14] Second, attorneys may submit a certificate of disposition, indicating that their client was acquitted or that the case was dismissed against the client, and request removal of the DNA profile from LDIS. Third, attorneys may submit a written consent to removal, signed by both the defense and prosecution, for the removal of the DNA profile from LDIS.

11. In all instances except where there is a court expungement order, the OCME Legal Department contacts the District Attorney's Office to confirm the authenticity of any documents

---

[10] *See id.*
[11] *See id.*
[12] *See id.*
[13] *See* https://www1.nyc.gov/site/ocme/frequently-asked-questions/frequently-asked-questions.page (last visited July 7, 2022); *see also* https://www1.nyc.gov/assets/ocme/downloads/pdf/forms/search_for_dna_profile_request.pdf (last visited July 7, 2022).
[14] *See* Forensic Biology Administrative Manual, Attorney/Customer Requests, at 12, https://www1.nyc.gov/assets/ocme/downloads/pdf/technical-manuals/forensic-biology-technical-manuals/attorney_requests_061821.pdf (last visited July 7, 2022).

4

presented and that the prosecution has no objection to removal of the DNA profile from LDIS. It is my understanding that the prosecution confers with the NYPD prior to confirming that there is no objection to the removal of the DNA profile from LDIS.

12. Once approval is received from the prosecution, the OCME Legal Department approves removal of the DNA profile and notifies the Department of Forensic Biology. The Department of Forensic Biology's Combined DNA Index System ("CODIS") Unit marks the DNA profile for removal that same day and once marked for removal, the DNA profile is no longer compared to any DNA profiles in LDIS. The DNA profiles are then removed from the Subject Index about one week later.

13. In addition to individual requests for removal, since 2020, the NYPD has conducted an on-going review of the individuals whose DNA profiles are in LDIS and has recommended removal of DNA profiles of some individuals whose profiles have been in the OCME database for 2 or more years. Every spring since 2020, the OCME sends the NYPD lists of persons whose profiles may be eligible for removal from LDIS based on when they were entered in the Subject Index. The most recent lists were sent to the NYPD on March 17, 2022, and contained the names of those whose DNA profiles were entered in the Subject Index in 2019 and 2020. Both Ms. Leslie and Mr. Burgos were on these lists.

14. The NYPD reviews these lists and then provides the names of those whose DNA profiles it recommends for removal to the OCME. The OCME received the first list of DNA profiles recommended for removal from the NYPD in 2020. To date, the NYPD has recommended over 6,000 DNA profiles for removal. The NYPD may also request that "a suspect, or series of suspects' or defendants' known DNA profile(s) be removed from LDIS.[15] The OCME takes no

---

[15] *Id.*, at 13.

position as to whether a DNA profile should be removed from LDIS and always follows the NYPD's recommendations. At this time, pursuant to this review, the OCME continues to receive NYPD recommendations for removal of DNA profiles for individuals whose profiles were entered in LDIS in 2019.

15.     When the OCME receives these recommendations from the NYPD, the OCME immediately ceases comparison of the DNA profiles to any profiles in LDIS. The profiles are marked for removal and subsequently removed from LDIS. [16]

16.     When an individual's DNA profile is removed from LDIS, it is never re-entered into LDIS. If the individual were subsequently arrested, or become a suspect in another criminal matter, and DNA samples from the individual (obtained through court order, consent or abandonment) and from the crime scene evidence were provided, and a request were made for DNA testing and comparison, a new DNA profile would be deduced.

Leslie and Burgos DNA Results

17.     In the case of Shakira Leslie, on July 15, 2019, the NYPD submitted a cup that Ms. Leslie had touched to the OCME for DNA analysis. The NYPD subsequently submitted gun swabs to the OCME from the gun that was associated with the incident that led to Ms. Leslie's arrest. That same day, a prosecutor from the Bronx County District Attorney's Office requested a comparison of the DNA from the gun swabs to the DNA on the cup to determine if there was a match. DNA analysis was performed on the cup, and a single-source DNA profile was deduced. This DNA profile developed from the cup was entered into LDIS on August 21, 2019. DNA analysis was subsequently performed on the gun swabs submitted by the NYPD, and the OCME determined

---

[16] *See* Department of Forensic Biology LDIS Statistics, Subject Index, Marked for removal, https://www1.nyc.gov/site/ocme/services/ldis-tally.page (last visited July 7, 2022).

that Ms. Leslie was excluded as a contributor on the swab taken from the "trigger/trigger guard" of the gun. The OCME sent the final DNA report indicating the above results to the Bronx County District Attorney's Office on October 16, 2019.

18. In the case of Shamill Burgos, on September 19, 2019, the NYPD submitted a cigarette butt to the OCME for DNA analysis. DNA analysis was performed on the cigarette butt and a single-source DNA profile was deduced. This DNA profile was entered into LDIS on February 4, 2020. The OCME sent the Bronx County District Attorney's Office the final DNA report on February 5, 2020. The DNA laboratory did not receive any associated crime scene evidence from the NYPD at the request of the District Attorney's office for comparison to the DNA profile developed for Mr. Burgos.

19. Since July 2020, the OCME policy has been that it will not perform DNA testing on any suspect or arrestee samples submitted for DNA analysis, unless there is crime scene evidence associated with the case that has also been submitted for testing.

20. There were never any matches between either Plaintiff's DNA profile and any DNA profiles in LDIS.

<ins>The Legal Aid Society's Requests on behalf of Ms. Leslie and Mr. Burgos</ins>

20. On January 7, 2022, J. David Pollock, "Staff Attorney, DNA Unit" with the Legal Aid Society, emailed the "Request to Search for DNA Profile Forms" to inquire whether several clients, including Mr. Burgos, had a DNA profile in LDIS. On January 10, 2022, I informed Mr. Pollock by email that Mr. Burgos' DNA profile was in LDIS. A copy of the email correspondence together with the form for Mr. Burgos is annexed as Exhibit A.

21. On January 24, 2022, Mr. Pollock, emailed the "Request to Search for DNA Profile Forms" to inquire whether several clients, including Ms. Leslie, had a DNA profile in LDIS. On January

26, 2022, I informed Mr. Pollock by email that Ms. Leslie's DNA profile was in LDIS. A copy of the email correspondence together with the form for Ms. Leslie is annexed as Exhibit B.

22. No request was ever subsequently received from a Legal Aid Society lawyer or either Plaintiff that the DNA profile of either Ms. Leslie or Mr. Burgos be removed from LDIS.

23.. It is a common practice for criminal defense attorneys, including attorneys from the Legal Aid Society, to submit requests to the OCME to learn whether their clients' DNA profiles are in LDIS.

24. It is additionally common practice for these same attorneys, including Legal Aid Society attorneys, to then submit requests to the OCME that their clients' profiles be removed from LDIS. These requests are accompanied by an expungement order, certificate of disposition or written consent from the District Attorney. As the complaint asserts, the criminal charges against each Plaintiff were dismissed.

25. On May 13, 2022, the NYPD sent the OCME a list of 174 individuals, whose DNA profiles were recommended for removal from LDIS. The list included Ms. Leslie and Mr. Burgos.

26. On that same day, the OCME marked all 174 profiles for removal and ceased comparing the DNA profiles to any profiles in LDIS and will not resume comparison. Ms. Leslie and Mr. Burgos' DNA profiles were subsequently removed from LDIS on May 19, 2022.

Dated: July 15, 2022
       New York, N.Y.

*[signature: Melanie L. Rios]*

Melanie L. Rios
Special Counsel
NYC OCME