UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAKIRA LESLIE and SHAMILL BURGOS on behalf
of themselves and all others similarly situated,

Plaintiff,

-against-

CITY OF NEW YORK; KEECHANT SEWELL, Police
Commissioner for the City of New York, in her official
capacity; KENNETH COREY, Chief of Department for
the New York City Police Department, in his official
capacity; JAMES ESSIG, Chief of Detectives for the
New York City Police Department, in his official
capacity; EMANUEL KATRANAKIS, Deputy Chief in
the Forensic Investigations Division of the New York
City Police Department, in his official capacity; and DR.
JASON GRAHAM, Acting Chief Medical Examiner for
the City of New York, in his official capacity,

Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

***HON. SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street - Room 2-180*
*New York, NY 10007*

*Of Counsel: Marilyn Richter*
*Tel: (212) 356-2083*
*Matter No. 2022-018804*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT

    POINT I

        THE COURT LACKS SUBJECT MATTER
        JURISDICTION BECAUSE THE PLAINTIFFS
        DO NOT HAVE STANDING ................................................................ 11

    POINT II

        EVEN IF *ARGUENDO,* PLAINTIFFS HAD
        STANDING, THEIR CLAIMS ARE NOW MOOT.
        PURSUANT TO DEFENDANTS' PRE-
        EXISTING POLICY, THEIR DNA PROFILES
        HAVE BEEN REMOVED FROM THE SUBJECT
        INDEX AND ARE NO LONGER COMPARED TO
        OTHER DNA PROFILES ...................................................................... 15

    POINT III

        THE COURT'S LACK OF SUBJECT MATTER
        JURISDICTION APPLIES TO THE PENDENT
        STATE CLAIM. IF *ARGUENDO* THE COURT
        HAS SUCH JURISDICTION, IT SHOULD
        DECLINE TO ASSUME SUPPLEMENTAL
        JURISDICTION IN THE EXERCISE OF ITS OF
        DISCRETION ......................................................................................... 19

CONCLUSION .................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**      **Pages**

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997)................................................................16

*Barrows v. Jackson,*
   346 U.S. 249 (1953)..............................................................15

*Board of Sch. Commissioners of Indianapolis v. Jacobs,*
   420 U.S. 128, 43 L. Ed. 2d 74, 95 S. Ct. 848 (1975) (per curiam).........................18

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983)..............................................13, 14, 17, 21

*Comer v. Cisneros,*
   37 F.3d 775 (2d Cir. 1994) ....................................................18

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006)..........................................................14, 20

*Davis v. FEC,*
   554 U.S. 724, 128 S. Ct. 2759 (2008)...........................................12

*Dorce v. City of N.Y.,*
   2 F.4th 82 (2d Cir. 2021) ......................................................13

*FEC v. Ted Cruz for Senate,*
   142 S. Ct. 1638 (2022).......................................................12, 13

*Genesis HealthCare Corp. v. Symczyk,*
   569 U.S. 66, 133 S. Ct. 1523 (2013)............................................16

*Granite State Outdoor Adver., Inc. v. Town of Orange,*
   303 F.3d 450 (2d Cir. 2002) ...................................................17

*Jones v. Meehan,*
   No. 14 Civ. 6402 (KPF), 2018 U.S. Dist. LEXIS 7395
   (S.D.N.Y. Jan. 16, 2018) ......................................................21

*Kamen v. American Tel. & Tel. Co.,*
   791 F.2d 1006 (2d Cir. 1986) ..................................................12

*Lewis v. Casey,*
   518 U.S. 343 (1996)............................................................15

**Cases**                                                                  **Pages**

*Lujan* v. *Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................................12

*Malik v. Meissner*,
    82 F.3d 560 (2d Cir. 1996) ...................................................................12

*Maryland v. King*,
    569 U.S. 435 (2013)...............................................................................21

*Mhany Mgmt. v. Cty. of Nassau*,
    819 F.3d 581 (2d Cir. 2016) ...........................................................16, 18

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)..........................................................................13, 15

*People v. Belliard*,
    70 Misc.3d 965 (Sup. Ct. N.Y. Co. 2020) ......................................20, 21

*People v. White*,
    60 Misc.3d 304 (Sup. Ct. Bx. Co. 2018) ...............................................20

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ...................................................................19

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016) ...............................................................19, 20

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966)...............................................................................21

*United States v. Wilbern*,
    No. 17-cr-6016-CJS-JWF, 2019 U.S. Dist. LEXIS 143286
    (W.D.N.Y. Apr. 19, 2019) .....................................................................21

*Warth* v. *Seldin*,
    422 U. S. 490 (1975)..............................................................................12

*Young v NY City Tr. Auth.*,
    903 F2d 146 (2d Cir. 1990) ...................................................................21

**Statutes**                                                                        **Pages**

28 U.S.C. § 1367....................................................................................................21

Fed. R. Civ. P. 12(b)(1) ............................................................................1

N.Y. Executive Law Article 49-B ...................................................................1, 2, 20

**Other Authorities**

Commission on Forensic Science.
   https://www.criminaljustice.ny.gov/pio/boards/index.html (last visited on July
   14, 2022)........................................................................................................22

https://www1.nyc.gov/assets/ocme/downloads/pdf/forms/search_for_dna_profile_
   request.pdf (last visited July 7, 2022) .......................................................................9

https://www1.nyc.gov/site/ocme/frequently-asked-questions/frequently-asked-
   questions.page (last visited July 7, 2022) ...................................................................9

## PRELIMINARY STATEMENT

Plaintiffs are two individuals who were arrested in unrelated incidents in 2019, and had their DNA profiles deduced from items they had touched and then discarded while in a police precinct. Plaintiffs' DNA profiles were subsequently uploaded to the Local DNA Index System ("LDIS"), which is the DNA database maintained by the New York City Office of the Chief Medical Examiner ("the OCME"), where their DNA profiles were compared to other DNA profiles in LDIS.

Plaintiffs seek to represent a class of all persons whose DNA was taken and analyzed from abandoned items without a warrant or court order. They seek declaratory relief that taking and analyzing the DNA from abandoned items, and maintaining the resulting DNA profiles in a DNA database where they are compared to other DNA profiles, violates the Fourth Amendment to the United States Constitution and N.Y. Executive Law Article 49-B. Plaintiffs also seek injunctive relief enjoining Defendants from continuing "the unconstitutional and unlawful practices described here" and ordering Defendants to expunge all DNA profiles that were created and maintained in the Subject Index (of LDIS) "as a result of the unconstitutional and unlawful practices described here" (Complaint ("C") Requested Relief, ¶¶ e. f, respectively).

Defendants now move to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. Plaintiffs lack standing to seek injunctive and declaratory relief. Plaintiffs have failed to articulate the requisite concrete and imminent injury that they will sustain in the absence of injunctive and declaratory relief. In addition, if Plaintiffs had a future injury, it was not caused by Defendants, who make available an alternative that would have precluded any injury; Plaintiffs chose not to utilize this. Further, Plaintiffs lack standing to assert the claims of third parties.

If *arguendo,* Plaintiffs had standing when this lawsuit was commenced to raise any of their claims, those claims are now moot. Pursuant to an on-going policy and practice of the Defendants, the DNA profiles of persons who were suspects, arrestees or convicted of crimes, that have been in the Subject Index of LDIS for more than two years, are systematically reviewed by the NYPD and are recommended for removal in accordance with certain criteria. Once recommendations for removal are forwarded to the OCME, comparison of the DNA profile to other DNA profiles in LDIS is immediately terminated. Removal of the DNA profiles from the subject index occurs subsequently. In the normal course of business, Plaintiff Leslie's DNA profile would have been recommended for removal in or around June 2022 and Plaintiff Burgos' DNA profile (assuming his relevant circumstances did not change) would have been recommended for removal in or around January 2023. Defendants expedited the review of Plaintiffs' DNA profiles and recommended their removal on May 13, 2022. The comparison of Plaintiffs' DNA profiles to crime scene DNA profiles ceased on that date and their profiles were removed from the Subject Index on May 19, 2022. Accordingly, Plaintiffs' claims were moot as of that date.

Finally, assuming, *arguendo*, Plaintiffs did have standing and that their claims were not moot, the Court should not exercise supplemental jurisdiction over their pendent claim brought pursuant to N.Y. Executive Law Article 49-B. Supplemental jurisdiction is discretionary and should not be exercised here, where the federal and state claims are not closely related and the claim raises a novel and complex question of state law involving state law enforcement authorities.

## STATEMENT OF FACTS

Both Plaintiffs were arrested by officers of the New York City Police Department ("the NYPD") in 2019 in two separate, unrelated incidents, for felony unlicensed possession of a firearm. At least one other person was arrested along with both Ms. Leslie and Mr. Burgos for possession of the firearm. While at a police precinct post-arrest, Ms. Leslie voluntarily drank a

2

cup of water and Mr. Burgos voluntarily smoked a cigarette provided by detectives. Ms. Leslie then discarded the cup and Mr. Burgos then discarded the cigarette butt. Both the cup discarded by Ms. Leslie and the cigarette discarded by Mr. Burgos were sent to the OCME for DNA analysis. The swab from the gun in the Leslie case was subsequently sent to the New York City Office of Chief Medical Examiner ("the OCME") at the request of the Bronx District Attorneys' Office for DNA analysis and comparison. (C ¶¶ 55-59, 63-66; Declaration of Melanie L. Rios, dated July 15, 2022, "Rios Decl" ¶ 17).

The sole purpose of DNA analysis is for identification; the parts of the DNA that are analyzed are 20 specific locations ("loci") that have been designated by the FBI as the Combined DNA Index System ("CODIS") core loci. The two alleles on these loci (one from the individual's mother and one from the individual's father), do not contain any personal information, such as medical information. The OCME only analyzes these locations of the DNA to deduce a DNA profile. (Declaration of Kyra McKay, dated July 15, 2022, "McKay Decl" ¶¶ 12-13).

DNA obtained during investigations, whether from an individual or from crime scene evidence, such as a gun or clothing, is sent to the OCME for DNA analysis. If the OCME can develop a DNA profile from evidence recovered at a crime scene, the profile is uploaded into the Forensic Index which is part of the OCME's Local DNA Index System ("LDIS"). DNA samples that are obtained from a criminal subject, such as an abandonment sample, a consent sample or a court ordered sample, are tested and the resulting profiles are uploaded into the Subject Index in LDIS (denominated "the Suspect Database" in the Complaint), where they are compared to other DNA profiles in LDIS, unless there is a protective order that precludes such entry. (Rios Decl ¶ 7; McKay Decl ¶¶ 14-15, 18-19).

The Plaintiffs' DNA profiles deduced from the discarded items were entered into the Subject Index. Similarly, a DNA profile was deduced from the gun swab in the Leslie case and entered into LDIS. The OCME never received the gun swabs in the Burgos case nor a request from the Bronx District Attorney's Office to make a DNA comparison in the Burgos case. Since July 2020, the OCME has had a policy of not testing the DNA of an individual unless it has received an item of crime scene evidence from the associated crime to be used for comparison purposes . Neither Ms. Leslie nor Mr. Burgos' DNA profiles ever yielded a "match" to any profile in LDIS. Ms. Leslie was excluded as a contributor to the DNA profile developed from the firearm recovered during her arrest. (Rio Decl ¶¶ 17-18, 20).

The criminal charges against both Plaintiffs were ultimately dismissed. Neither Plaintiff has ever been convicted of a crime and there is no indication that either Plaintiff has an open criminal case (C ¶¶ 61, 67).  In the case of each Plaintiff, the DNA on the abandoned item was determined to be a single-source sample, in other words, the DNA was only from a single individual. (McKay Decl ¶¶ 15).

In February 2020, Defendants publicized policy changes concerning the collection and retention of DNA profiles. Specifically, Defendants announced the start of an on-going systematic review of DNA profiles in the OCME subject index. The NYPD announced 1) an initial full audit and review of every profile that had been in the Subject Index for at least two full years, 2) after the initial audit, every four years the NYPD would again audit the entire Subject Index, and 3) going forward all DNA profiles added to the OCME subject index will be eligible for review after reaching their second full year of existence in the Subject Index. This review policy created an exit procedure from the OCME Subject Index that required no effort by the affected individual and

no court order. (Declaration of Emanuel Katranakis, dated July 15, 2002, "Katranakis Decl" ¶¶ 11,13, 14).

Additionally, the NYPD announced it would make data concerning its review publicly available on its website including the number of DNA profiles reviewed, the number recommended for removal, and the number of profiles that were not recommended for removal, broken down by the reason the removal was not recommended. (Katranakis Decl ¶ 20).

The NYPD review process is the same for the initial audit, the quadrennial audits and the systematic review that occurs after a profile reaches its second year in the Subject Index. The NYPD will recommend removal of a DNA profile from the Subject Index unless, at the time of the review, the person: 1) has been convicted of a felony or a N.Y. Penal Law misdemeanor; 2) is a subject of an on-going prosecution or a suspect in an on-going investigation; or 3) in limited circumstances, was the subject of an arrest or prosecution where no judicial conclusion was reached on the person's innocence. These limited circumstances are extremely rare and involve certain types of cases such as domestic violence, where the dismissals resulted from witness intimidation or a failure to cooperate by a victim or witness. Published data shows that profiles are not recommended for removal based on this reason in less than ½ of 1% of the cases where removal is not approved. (Katranakis Decl ¶ 12).

The systematic review process works as follows: the OCME provides the NYPD with lists of the names of persons whose DNA profiles were entered in the Subject Index within a particular period. The initial NYPD review, which began in 2020, entailed review of records associated with all the DNA profiles entered in the Subject Index from 1999 through 2017. Since older records were not digitized, locating and retrieving them was a time-consuming process. Following this review, the NYPD forwards lists of the profiles that are recommended for removal to the OCME.

OCME always accepts the recommendations of the NYPD and immediately upon receipt of these recommendations, ceases comparison of these DNA profiles to other profiles in LDIS. The actual removal of the DNA profiles from the Subject Index occurs subsequently. (Rios Decl ¶¶ 13-15; Katranakis Decl ¶¶ 15-16).

The most recent lists of persons whose DNA profiles were eligible for review was sent by the OCME to the NYPD on March 17, 2022. Among those on these lists were Plaintiffs Leslie and Burgos. Review of the persons on the lists began shortly after receipt. The NYPD normally reviews the persons on a list in order of the "FBS" number, which is a number assigned by the OCME. The OCME creates a DNA case file for each DNA sample received, and assigns an FBS (Forensic Biology) number to each DNA subject sample case, in chronological order. (McKay Decl ¶ 10; Katranakis Decl ¶¶ 16-18; Rios Decl ¶ 13).

As of the second week in May 2022, as a result of its systematic review, the NYPD had compiled recommendations for removal of the DNA profiles of 172 persons. The NYPD expedited the review of whether Plaintiffs' DNA profiles also should be recommended for removal. This review was based on the same factors and analysis applied to all other persons on the OCME lists. The only difference was that the review for Plaintiffs' profiles was expedited, in that their FBS #s had not yet been reached for review. The review resulted in recommendations that both Plaintiffs' DNA profiles be removed from the Subject Index. (Katranakis Decl ¶¶ 18-19; Rio Decl ¶¶ 25-26).

The Plaintiffs were then added to the list of 172 persons whose DNA profiles were being recommended for removal and this list was sent by the NYPD to the OCME on May 13, 2022. On that same day, May 13, 2022, OCME ceased comparing the DNA profiles of these 174 persons to

DNA profiles in the forensic index. On May 19, 2022, Plaintiffs' DNA profiles were removed from the subject index. (Rios Decl ¶¶ 25-26); Katranakis Decl ¶¶ 18-19).

Had the review of Plaintiffs not been expedited, in the normal course of business, based on the FBS #s assigned to Plaintiffs, Plaintiff Leslie's review would have been conducted in or around June 2022 and Plaintiff Burgos' review would have been conducted in or around January 2023. The review for Plaintiff Leslie in or around June 2022 would have resulted in the same recommendation for removal, because the factors that are reviewed did not change for Ms. Leslie since May 2022. The review for Plaintiff Burgos, which would have occurred on or around January 2023, would have also resulted in the same recommendation for removal, provided the factors for review did not change for Mr. Burgos between May 2022 and January 2023. (Katranakis Decl ¶ 19).

The policy announced in February 2020 further provided that persons having a certificate of disposition showing an acquittal on the criminal charges associated with their collected DNA sample, may individually request that their DNA profile be removed from the Subject Index. This simple submission also requires neither a court order nor an attorney. Upon receipt of this certificate of disposition, following conferral with the District Attorney's Office, the OCME immediately ceases to compare the individual's DNA profile to the DNA profiles in the forensic index. The OCME removes the profile from its' Subject Index approximately one week thereafter. (Rios Decl ¶¶ 10-12)

However, since at least 2019, the OCME, and District Attorney's Office that prosecuted the case have received individual requests for removal of a person's DNA profile from the Subject Index, when the person's criminal case was dismissed. These individual requests are considered and are frequently approved. If the request is submitted to the OCME, they contact the District

Attorney's Office which then confers with the NYPD. The determination whether to grant or deny the removal request is made based on the same factors that are used in the systematic review. (Rios Decl ¶¶ 10-12, Declaration of Robert Barrows, dated July 15, 2022, "Barrows Decl" ¶¶ 5-7).

Although individuals seeking the removal of their own DNA profile from the OCME subject index may submit these requests themselves, the requests are most frequently submitted by a criminal defense attorney from the organization or firm that represented the individual, including attorneys from the Legal Aid Society, which represents Plaintiffs in this case. One example of an individual request made in 2019 was submitted by the Terri Rosenblatt of the DNA Unit of the Legal Aid Society, and was approved. In that case, the certificate of disposition showed that the charges had been dismissed. (Rios Decl ¶ 10; Barrows Decl ¶¶ 5-6, Exh. A to Barrows Decl). The Legal Aid Society has continued to make individual removal requests on behalf of their clients. (Barrows Decl ¶ 9, Exh. B to Barrows Decl).

In almost all cases, since before and after the 2020 policy reforms, individual requests for removal are granted when the individual is not the subject of an on-going criminal prosecution, not a suspect in an on-going criminal investigation and not a designated offender (i.e., not convicted of a felony or a N.Y. Penal Law misdemeanor.) (Barrows Decl ¶ 7). When an individual request is approved, the OCME is notified and immediately stops comparison of the DNA profile to other profiles in LDIS and removes the DNA profile from the Subject Index about one week later. No DNA profile that has been removed from the Subject Index has ever been re-entered. Rios Decl ¶¶ 10-12, 16).

Since 2020, the OCME prominently displays on its public website a statement that members of the public may submit a form to the OCME to find out whether the OCME has their

DNA profile and whether their DNA profile is in the OCME database. A link is provided to the form.[1] The form is submitted directly to the OCME's Legal Department, which reviews the form and then informs the individual or his/her inquiring attorney whether the individual's DNA profile is in the OCME database. (Rios Decl ¶ 9).

Plaintiffs

Plaintiffs, through one of their attorneys in this case, J. David Pollock, who is a Staff Lawyer – DNA Unit of the Legal Aid Society, did submit these forms to the OCME. On January 7, 2022, Mr. Pollock submitted the form for Mr. Burgos and other clients. On January 10, 2022, Mr. Pollock was informed by Melanie Rios, an OCME lawyer, that OCME did have Mr. Burgos' DNA profile and it was in the OCME database. On January 24, 2022, Mr. Pollock submitted the form for Ms. Leslie and other clients. On January 26, 2022, Ms. Rios informed Mr. Pollock that OCME did have Ms. Leslie's profile and it was in the OCME database. (Rios Decl ¶¶ 20-21, Exhs. A and B to the Rios Decl).

No subsequent request for removal of the DNA profiles of either Mr. Burgos or Ms. Leslie from the OCME database was ever received, even though the Legal Aid Society has been making individual requests for removal of clients' DNA profiles from the OCME database since at least 2019. In practice, once lawyers have determined from the OCME that their clients' DNA profiles are in the OCME database, they often request that the profiles be removed. (Rios Declaration ¶¶ 22-24).

The fact that the Legal Aid Society lawyers are familiar with Defendants' policies and practices concerning DNA is clear from both the Complaint and their past interactions with

---

[1] *See* https://www1.nyc.gov/site/ocme/frequently-asked-questions/frequently-asked-questions.page (last visited July 7, 2022); *see also* https://www1.nyc.gov/assets/ocme/downloads/pdf/forms/search_for_dna_profile_request.pdf (last visited July 7, 2022).

Defendants' counsel concerning DNA profiles of their clients. It can be presumed that the Legal Aid Society lawyers were familiar with the criminal records of Plaintiffs, and accordingly knew that pursuant to Defendants' policy and practice, it was very likely that requests for removal of Plaintiffs' DNA profiles would have been granted and the comparison of their DNA profiles to other DNA profiles would have then ceased, and their DNA profiles would have been removed from the Subject Index about one week thereafter. In fact, had Plaintiffs made individual requests for removal, pursuant to the existing policies and practices, those requests would have been granted, as evidenced by the fact that Plaintiffs' DNA profiles were subsequently recommended for removal by the NYPD as part of the systematic review process. (Barrows Decl ¶ 7; Rios Decl ¶ 12).

Instead of making those requests, two months later, on March 21, 2022, Plaintiffs commenced this lawsuit seeking injunctive and declaratory relief. Their only asserted injuries are that Ms. Leslie is "troubled" and Mr. Burgos is "worried and scared" by the City treating them as "permanent suspects in all crimes" (C ¶¶ 62, 68).

Plaintiffs make assertions about issues that are inapplicable to them. Plaintiffs make assertions concerning juveniles, but Plaintiffs are not juveniles. As the Complaint asserts (C ¶ 34), the legal framework that governs proceedings for juveniles who are charged or found guilty of engaging in behavior that would be a crime if committed by an adult, is very different than the legal framework for adults who are charged with criminal behavior. The Complaint also makes assertions about Investigative Genetic Genealogy ("IGG"), but IGG is not performed by the OCME and the DNA profiles in the OCME Subject Index are not used in IGG. The only role the OCME has in IGG is to provide the NYPD with DNA samples from crime scenes; i.e., extracts of DNA from crime scene evidence. (McKay Decl ¶ 24). The NYPD transports the crime scene

DNA to either the FBI, which operates a laboratory that performs the DNA analysis necessary for IGG, or to one of two private laboratories in New York State that are accredited and audited by the New York State Department of Health to perform this analysis.

The crime scene DNA is then developed and compared to the DNA profiles of consumers who have voluntarily provided their DNA to commercial genealogy companies, such as GEDmatch and/or FTDNA, and opted-in to law enforcement searches. It is these commercial genealogical databases which provide the DNA profiles for IGG. (Katranakis Decl ¶¶ 23-26).

## ARGUMENT

### POINT I

### THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE PLAINTIFFS DO NOT HAVE STANDING

Under Article III of the Constitution, federal courts only have jurisdiction to decide cases and controversies. "[T]he requirement that a claimant have "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As the party invoking the federal court's jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). Evidence outside the pleadings may be considered on a motion to dismiss for lack of subject matter jurisdiction. *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). For purposes of assessing standing, it is assumed that plaintiffs' legal claims are valid. *FEC v. Ted Cruz for Senate*, 142 S. Ct. 1638, 1647-48 (2022), quoting *Warth* v. *Seldin*, 422 U. S. 490 (1975). Accordingly, it is assumed here that the comparison of Plaintiffs' DNA profiles to other DNA profiles in LDIS is illegal.

"To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling. *Lujan,* at 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351." *Davis v. FEC* , 554 U.S. 724, 733, 128 S. Ct. 2759, 2768 (2008). When plaintiffs seek injunctive and declaratory relief, they must demonstrate a likelihood of *future* injury that is "substantial and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) quoting *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974); *Dorce v. City of N.Y.*, 2 F.4th 82, 95 (2d Cir. 2021).

Plaintiffs do not satisfy the causation requirement of standing; they must show that their alleged future injury is fairly traceable to Defendants' actions. Plaintiffs cannot satisfy this requirement, because Defendants provided an available alternative that would have prevented any future injury. Plaintiffs could have submitted individual requests that their DNA profiles be removed from the Subject Index, and those requests would have been granted. As soon as the requests were granted, the comparison of Plaintiffs' DNA profiles to other DNA profiles in LDIS would have ceased, and Plaintiffs' DNA profiles would have been removed from the Subject Index approximately one week later. The availability of this alternative provided by Defendants precludes a finding that Plaintiffs' alleged injury is traceable to Defendants.

This concept was discussed in the Supreme Court's recent ruling in *FEC, supra*, 142 S.Ct. at 1647-48. It was found inapplicable there because plaintiffs claimed that the available alternative also imposed illegal requirements on them. Here, Plaintiffs do not claim, nor could they, that Defendants' policy and practice that allows them to make an individual request for removal of their DNA profiles from the Subject Index violates their rights.

Plaintiffs also fail to satisfy the injury requirement. The only alleged injury here is that Ms. Leslie is "troubled" and Mr. Burgos is "worried and scared" by the City treating them as

"permanent suspects in all crimes" (C ¶¶ 62, 68). This apparently refers to the comparison of Plaintiffs' DNA profiles to the DNA profiles in LDIS.

However, Defendants' challenged actions do not make Plaintiffs "permanent suspects in all crimes." The DNA comparison is not made for "all crimes." The Complaint itself cites statistics which show that there are not DNA profiles from all crimes in LDIS. (C ¶ 8). Further, there is no "permanent" comparison. Defendants provide several methods which can end the comparison. Accordingly, Plaintiffs' claimed injuries, of being troubled (Leslie), or worried and scared (Burgos), which are based on conjecture that they will be permanent suspects in all crimes, does not satisfy the requirement that to establish an existing controversy sufficient to confer standing, a plaintiff's claimed injury must be based on reality rather than on conjecture or speculation. *Lyons*, *supra*, 461 U.S. at 102-105.

In addition, Plaintiffs' failure to utilize the available alternative indicates the insubstantial nature of their claimed injury. Plaintiffs are represented by the Legal Aid Society in this lawsuit, and were represented by them when they learned that their DNA profiles were in the Subject Index and were being compared to DNA profiles in LDIS. Legal Aid Society lawyers, and in particular those who work in the Society's DNA Unit, like Mr. Pollock, who made the inquiries on Plaintiffs' behalf, are knowledgeable about the available alternative, and since at least 2019 have used it to have the DNA profiles of other clients removed from the Subject Index. Plaintiffs' intentional decision not to utilize this alternative, shows that their claimed injuries of being troubled, worried and scared are not substantial, as is required for standing to seek injunctive relief. *Id.* at 103.

Plaintiffs also lack standing to seek injunctive and declaratory relief concerning the other claims they make, about juveniles and IGG. Plaintiffs must demonstrate standing for each claim they seek to assert. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 337 (2006). Plaintiffs fail to

allege any present or imminent future injury to themselves resulting from their assertions concerning juveniles and IGG, which is the first requirement for standing. Nor could they. Plaintiffs are not juveniles. As the Complaint itself recognizes (¶ 34), the legal framework establishing rights and procedures governing juveniles who may have engaged in conduct that would be a crime if committed by an adult, is very different than the criminal law governing adults. "One may not claim standing…to vindicate the constitutional rights of some third party." *Barrows v. Jackson,* 346 U.S. 249, 255 (1953). That Plaintiffs seek to represent a class of persons, does not confer standing. If the named plaintiffs lack standing, they may not seek relief on behalf of themselves or any member of the putative class. *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974).

As for IGG, it is a widely-utilized technique. The DNA analysis is performed for the NYPD by the FBI and two private laboratories that are accredited by New York State to perform this analysis. Most significantly, Plaintiffs' DNA and DNA profiles have not been used in IGG, unless Plaintiffs submitted their DNA samples to a commercial genealogy company. The only DNA provided by Defendants for IGG is forensic crime scene DNA, which is then compared to the DNA profiles obtained from commercial genealogy companies such as GEDmatch and/or FTDNA.

Plaintiffs' failure to allege any injury to themselves resulting from their allegations concerning juveniles and IGG is dispositive. "…the actual-injury requirement [for standing] would hardly serve the purpose . . . if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy *all* inadequacies in that administration. " *Lewis* v. *Casey,* 518 U.S. 343, 357 (1996). "Standing is not dispensed in gross." *Id.* at 358.

## POINT II

**EVEN IF *ARGUENDO*, PLAINTIFFS HAD STANDING, THEIR CLAIMS ARE NOW MOOT. PURSUANT TO DEFENDANTS' PRE-EXISTING POLICY, THEIR DNA PROFILES HAVE BEEN REMOVED FROM THE SUBJECT INDEX AND ARE NO LONGER COMPARED TO OTHER DNA PROFILES**

The Supreme Court has described mootness as "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" (internal citation omitted). *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22, (1997). If an intervening event deprives a plaintiff of this personal interest during the litigation, "the action can no longer proceed and must be dismissed as moot." (internal citation omitted). *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71-72, 133 S. Ct. 1523, 1528 (2013).

Even if Plaintiffs had standing when they commenced this lawsuit on March 21, 2022, their claims became moot less than two months later, on May 13, 2022, when comparison of their DNA profiles to other DNA profiles in the LDIS ceased. Their profiles were then removed from LDIS on May 19, 2022. As of May 13, 2022, Plaintiffs no longer had a personal stake in the outcome of the case and the case should be dismissed as moot.

In Plaintiffs' response to Defendants' premotion letter, Plaintiffs cite two cases in support of their position that this case falls within two exceptions to the mootness doctrine. Neither exception is applicable here. The first is the voluntary cessation exception, and Plaintiffs cite *Mhany Mgmt. v. Cty. of Nassau*, 819 F.3d 581 (2d Cir. 2016) in support of their position. The general rule is that voluntary cessation of the alleged illegal challenged activity "will usually render a case moot," provided the defendant can show that: "'(1) there is no reasonable expectation that

the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.' *Granite State Outdoor Adver., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (internal quotation marks omitted)." (emphasis added). *Id.* at 603.

These requirements are satisfied here. There is no reasonable expectation that either Plaintiff will again have their DNA profile compared to the DNA profiles in LDIS. The OCME has never re-entered into LDIS a DNA profile that has been removed from LDIS, and the NYPD has never requested that OCME do so. According to the Complaint, neither Plaintiff has ever been convicted of a crime, Plaintiff Burgos is in the armed forces and residing in Louisiana, and Plaintiff Leslie is employed and has a young child. (C ¶¶ 61, 67). The expectation that either Plaintiff will again be arrested, and then will again abandon an item in a police precinct, is no more reasonable than Mr. Lyons' expectation that he would again be subject to a police chokehold. As for the second requirement, the removal of Plaintiffs' DNA profiles from the subject database has completely eradicated the effects of the alleged violation. All comparison of Plaintiffs' DNA profiles to forensic profiles ceased on May 13, 2022, and neither Plaintiff's DNA profile was ever matched against a DNA profile from a crime scene.

It is noteworthy that the intervening actions that have made this case moot would have been taken in the normal course of business, had this lawsuit not been commenced. Pursuant to Defendants' policy, which has been in effect since February 2020, Defendants systematically review and remove DNA profiles that have been in the Subject Index for more than two years, unless the individual is a designated offender or the subject of an on-going prosecution or criminal investigation. The lists of eligible persons to be considered for removal, who had been entered in LDIS in 2019 and 2020, and which included both Plaintiffs, were prepared by the OCME and sent

to the NYPD on March 17, 2022, before this lawsuit was commenced. The determination that both Plaintiffs met the criteria for removal is consistent with the criteria set out in the policy.

The only action that was taken by Defendants in response to the lawsuit was to expedite the process for Plaintiffs. Had there been no lawsuit, the recommendations for removal of Plaintiff Leslie's profile would have been made in or around June 2022, and for Plaintiff Burgos' profile would have been made in or around January 2023, provided that he continued to meet the criteria.

There could not be a greater contrast between these facts and the facts in *Mhany*. Defendants there waited six years into that litigation, on the eve of moving for summary judgment, before announcing their planned voluntary action, which they claimed mooted the case. The planned action was the building of a courthouse on a site which the defendants had refused to authorize for construction of affordable housing; this refusal was the subject of the lawsuit. After a defendant was dismissed from the case, no action was taken to build the courthouse for three years, until notices of appeal were filed. *Id*. at 604-05. The Second Circuit found that "suspicious timing and circumstances pervaded" this planned action and noted that the Supreme Court viewed mootness claims skeptically if they were not timely raised. *Id*. at 604 The court concluded that in light of these facts, it was not absolutely clear that defendants would build the courthouse. Nor was it clear that they would not resume their challenged conduct. *Id*. at 604-05. *Mhany* bears no relation to the situation presented here; it is simply inapposite. The voluntary cessation exception is not applicable here.

The second cited exception concerns putative class actions.

> [I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot. *Board of Sch. Commissioners of Indianapolis v. Jacobs*, 420 U.S. 128, 129-30, 43 L. Ed. 2d 74, 95 S. Ct. 848 (1975) (per curiam).

*Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994)

17

Plaintiffs assert the inherently transitory exception to this general rule, and cite *Salazar v. King*, 822 F.3d 61 (2d Cir. 2016). Under the inherently transitory exception:

> The critical question for the "inherently transitory" exception to mootness is whether the court will have time to rule on a motion for class certification brought by a plaintiff who has standing to bring a particular claim before the claim will become moot; the inquiry is not *why* the claim will become moot.

*Salazar, supra,* 822 F.3d at 74.

The plaintiffs in *Salazar* were recipients of federal student loans who had attended certain for-profit schools. They claimed that the defendant federal agency, in violation of regulations, failed to suspend the collection of their loans and notify them of their loan discharge rights. They sought to represent a class of loan recipients who had attended the same schools. The seven named plaintiffs each applied for a discharge of his/her loan and all their applications were processed and granted very quickly; the average processing time was less than three months. The court expressed concern that this was insufficient time to address a class action motion. *Id.* at 74. The court also emphasized that there was a strong presumption favoring judicial review of federal administrative action, which further supported its decision to apply the inherently transitory exception. *Id.*

The situation here does not present the same concern. The timeline is much longer. The Complaint cites to the NYPD's May 2021 data concerning their systematic review, which shows that there were over 1,100 persons who were not designated offenders, whose DNA profiles were not recommended for removal after their profiles had been in the Subject Index for more than two years. While some of these individuals had their DNA collected pursuant to a court order or consent, the Complaint alleges that a significant number would have had their DNA collected from an abandoned item. There are additional individuals whose DNA profiles were only entered in the Subject Index recently, who will not be eligible for the systematic review for as long as two years, and who are not eligible for an individual removal because they are the subject of an on-going

prosecution or police investigation. There would be ample time to rule on a motion for class certification brought by one of these potential plaintiffs. Finally, the strong presumption favoring judicial review in *Salazar* is not present here. The inherently transitory exception is also not applicable here. Accordingly, the case is moot and should be dismissed.

## POINT III

**THE COURT'S LACK OF SUBJECT MATTER JURISDICTION APPLIES TO THE PENDENT STATE CLAIM. IF *ARGUENDO* THE COURT HAS SUCH JURISDICTION, IT SHOULD DECLINE TO ASSUME SUPPLEMENTAL JURISDICTION IN THE EXERCISE OF ITS OF DISCRETION**

A federal court may not exercise supplemental jurisdiction over a claim "that does not itself satisfy those elements of the Article III inquiry...." *DaimlerChrysler Corp., supra*, 547 U.S. at 351-52. For the same reasons discussed in Points I and II above, this Court lacks supplemental jurisdiction over Plaintiffs' pendent state claim.

Plaintiffs' second cause of action asserts that Article 49-B of the N.Y. Executive Law, prohibits localities in New York State from maintaining a subject index and provides that only the State may maintain a subject index, which must be limited to the DNA profiles of persons convicted of crimes (C ¶¶ 32-33). No appellate court in New York has so construed Article 49-B, and numerous lower court decisions have held that Article 49-B does not prohibit the OCME from maintaining its Subject Index. *See, e.g, People v. Belliard*, 70 Misc.3d 965, 970-72 (Sup. Ct. N.Y. Co. 2020) *People v. White*, 60 Misc.3d 304, 307-310 (Sup. Ct. Bx. Co. 2018) (collecting 12 other decisions to same effect, at 307, n.1).

Even if, *arguendo*, there were subject matter jurisdiction, supplemental jurisdiction is discretionary, 28 U.S.C. § 1367)(c); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), and should not be exercised here, where it would deprive state courts of the opportunity to develop

state law, *Young v NY City Tr. Auth.*, 903 F2d 146, 163-164 (2d Cir. 1990) (internal citation omitted), and conflict with the principles of comity and federalism, which are compelling when federal courts are asked to oversee state law enforcement authorities. *Lyons, supra,* 461 U.S. at 112. *See also,* 28 U.S.C. § 1367)(c)(1) (a district court may decline to exercise jurisdiction over a "novel or complex issue of State law"); *United Mine Workers, supra*, 383 U.S. at 726.

Supplemental jurisdiction should not be exercised because the federal and state claims are not closely related. *Young, supra*, 903 F.2d at 164. The Fourth Amendment does not limit DNA subject indexes to persons who have been convicted of crimes, *Maryland v. King*, 569 U.S. 435 (2013), nor preclude the collection or analysis of DNA on abandoned items, *Jones v. Meehan*, No. 14 Civ. 6402 (KPF), 2018 U.S. Dist. LEXIS 7395, 2018 at *11-14, 28-30 (S.D.N.Y. Jan. 16, 2018); *United States v. Wilbern*, No. 17-cr-6016-CJS-JWF, 2019 U.S. Dist. LEXIS 143286 at *16-17, 22-23, n.7 (W.D.N.Y. Apr. 19, 2019), nor bar localities from maintaining their own DNA subject indexes.

Finally, in *People v. Belliard*, *supra*, 70 Misc.3d at 970-72, the court held that the OCME and all other forensic laboratories in New York State are regulated by the New York State Commission on Forensic Science, which was established by the Legislature and is under the purview of the State Commissioner of Criminal Justice Services, and that they, and not the courts, have the authority to determine whether the OCME and other local forensic laboratories may maintain Local DNA Index Systems, containing the DNA profiles of persons who are not designated offenders. It should be noted that Jessica Goldthwaite, representing the Legal Aid Society, is a member of the Commission on Forensic Science. https://www.criminaljustice.ny.gov/pio/boards/index.html (last visited on July 14, 2022).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that Defendants' motion to dismiss

the complaint be granted, and for such other relief as to the Court may be just and proper.

Date:      New York, New York
            July 15, 2022

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street, Room 2-180
New York, New York 10007
(212) 356-2083

By: _____
     MARILYN RICHTER
     Assistant Corporation Counsel