UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

SHAKIRA LESLIE; and SHAMILL
BURGOS; on behalf of themselves and all
others similarly situated,

                              *Plaintiffs*,

                        v.

CITY OF NEW YORK; KEECHANT SEWELL,
Police Commissioner for the City of New York, in
her official capacity; KENNETH COREY, Chief of
Department for the New York City Police
Department, in his official capacity; JAMES
ESSIG, Chief of Detectives for the New York City
Police Department, in his official capacity;
EMANUEL KATRANAKIS, Deputy Chief in the
Forensic Investigations Division of the New York
City Police Department, in his official capacity;
and DR. JASON GRAHAM, Acting Chief Medical
Examiner for the City of New York, in his official
capacity;

                              *Defendants*.

------------------------------------------------------------ x

Case No. 1:22-CV-02305

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE APPLICATION OF PULLMAN ABSTENTION

Philip Desgranges
J. David Pollock
Paula Garcia-Salazar
Anna Blondell
Allison Durkin
Peter Laumann
Lisa Freeman
Corey Stoughton
The Legal Aid Society
199 Water Street
New York, NY 10038

*Attorneys for Plaintiffs*

Dated: February 3, 2023
      New York, N.Y.

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 1

ARGUMENT .................................................................................................................... 3

  I.   The Resolution Of Plaintiffs' Fourth Amendment Claim Does Not Depend On An Interpretation Of Their State Law Claim. ................................................................. 4

  II.  Article 49-B Contains No Ambiguous Terms That Could Be Construed As Authorizing The City's Suspect Index. ....................................................................... 6

  III.  No Interpretation Of Article 49-B Would Eliminate The Need To Adjudicate Plaintiffs' Fourth Amendment Claim. ......................................................................... 9

CONCLUSION ............................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Baggett v. Bullitt*, 377 U.S. 360 (1964)..................................................................... 9

*C.R. Corps v. Pestana*, No. 21 CIV. 9128 (VM), 2022 WL 1422852 (S.D.N.Y. May 5, 2022).... 6

*Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523 (1967) ........... 10

*Canaday v. Koch*, 608 F. Supp. 1460 (S.D.N.Y. 1985)............................................... 4, 5

*Cannady v. Valentin*, 768 F.2d 501 (2d Cir. 1985)........................................................ 4

*Dubin v. Cnty. of Nassau*, 277 F. Supp. 3d 366 (E.D.N.Y. 2017) ........................... 4, 10

*Flores v. Stanford*, No. 18 CV 2468 (VB), 2019 WL 4572703 (S.D.N.Y. Sept. 20, 2019)........... 6

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)................................... 10

*Hawaii Housing Authority v. Midkiff*, 467 U.S. 229 (1984) ......................................... 3

*Jayaraj v. Scappini*, 66 F.3d 36 (2d Cir. 1995)............................................................ 6

*Kusper v. Pontikes*, 414 U.S. 51 (1973)..................................................................... 9

*Langer v. New York State Off. of Ct. Admin.*, No. 98-CV-0413E(F), 1998 WL 799153 (W.D.N.Y.
   Nov. 13, 1998) ...................................................................................................... 7

*LeadingAge New York, Inc. v. Shah*, 32 N.Y.3d 249 (2018) ........................................ 1

*Samy F. v Fabrizio*, 176 A.D.3d 44 (1st Dep't 2019)................................................... 8

*Matter of Stevens v. New York State Div. of Crim. Just. Servs.*, 206 A.D.3d 88 (1st Dep't 2022). 8

*McRedmond v. Wilson*, 533 F.2d 757 (2d Cir. 1976) ............................................... 3, 8

*Moe v. Dinkins*, 635 F.2d 1045 (2d Cir. 1980) ........................................................... 9

*Moore v. Cnty. of Suffolk*, 851 F. Supp. 2d 447 (E.D.N.Y. 2012) .................................. 5

*Naprstek v. City of Norwich*, 545 F.2d 815 (2d Cir. 1976).......................................... 9

*Nicholas v. Goord,* 430 F.3d 652 (2d Cir. 2005) ..................................................... 1, 5

*Ohio Bureau of Emp't Servs. v. Hodory*, 431 U.S. 471 (1977)................................... 10

*People v. Belliard*, 70 Misc. 3d 965 (Sup. Ct. N.Y. Cnty. 2020) .................................. 8

*People v. Diack*, 24 N.Y.3d 674 (2015)................................................................... 2, 8

*People v. Fisher*, 71 Misc. 3d 1051 (Sup. Ct. N.Y. Cnty. 2021).................................... 8

*People v. White*, 60 Misc. 3d 304 (Sup. Ct. Bronx Cnty. 2018).................................... 8

*Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ............................... passim

*Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602 (1989) ........................................... 1

*United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588 (2d Cir. 1989) ...................... passim

*United States v. Amerson*, 483 F.3d 73 (2d Cir. 2007) ........................................................ 5

*Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000) ........................... 3, 4

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971) ................................................................. 6

*Zwickler v. Koota*, 389 U.S. 241 (1967) ................................................................................. 3

**STATUTES**

N.Y. Exec. Law § 995 ............................................................................................................. 2

N.Y. Exec. Law Article 15-A ................................................................................................. 7

N.Y. Exec. Law Article 49-B ......................................................................................... passim

## BACKGROUND

In response to the Court's request, plaintiffs write to explain why the *Pullman* abstention doctrine does not apply to this case. As background, plaintiffs challenge New York City's policy and practice of secretly taking and analyzing the DNA of people whom the police suspect of committing a crime, without a warrant or court order, and maintaining this DNA in an index (referred to here as the "Suspect Index") where it is compared to past and future crime scene evidence. *See generally* Compl. (ECF No. 1). Plaintiffs' challenge involves two independent causes of action. First, plaintiffs allege that the defendants' collection, analysis, and indexing of their DNA, without a warrant or court order, violates their Fourth Amendment right to be free from unreasonable searches. *See* Compl. ¶¶ 1-3, 15-27, 55–66, 74. Under this claim, the searches that violate their Fourth Amendment rights are twofold: (i) the collection of their DNA; and (ii) the analysis and indexing of their DNA. *See Skinner v. Ry. Labor Execs.' Ass'n,* 489 U.S. 602, 617–18 (1989) (finding that the "collection and subsequent analysis of . . . biological samples must be deemed [separate] Fourth Amendment searches . . . ."); *see also Nicholas v. Goord,* 430 F.3d 652, 670 (2d Cir. 2005) (finding that the "analysis and maintenance" of DNA information in the government's DNA-indexing database is a Fourth Amendment search).

Second, plaintiffs allege that the City's Suspect Index violates Article 49-B of New York's Executive Law because (i) it is not authorized under that statute, which only authorizes the operation of a statewide index for adults convicted of certain crimes, s*ee* Compl. ¶¶ 4, 28, 31-33, 75; and (ii) the City is prohibited from operating an index inconsistent with the comprehensive regulations of Article 49-B. *See* Compl. ¶¶ 4, 28, 31-36, 75. Underlying this claim are two well-established democratic doctrines: that government agencies may not act outside the scope of their legislative authorization, *see LeadingAge New York, Inc. v. Shah,* 32 N.Y.3d 249, 259-60 (2018);

and that local government agencies are preempted from exercising their power in a field that the

state legislature comprehensively regulates. *See People v. Diack*, 24 N.Y.3d 674, 678-79 (2015).

Article 49-B plainly establishes a single centralized, statewide DNA index:

- "[T]he commissioner of criminal justice services is authorized to promulgate a plan for the establishment of a computerized state DNA identification index within the division of criminal justice services." N.Y. Exec. Law § 995-c(1).
- "[T]he commissioner of criminal justice services is hereby authorized to establish a computerized state DNA identification index pursuant to the provisions of this article." N.Y. Exec. Law § 995-c(2).
- "'State DNA identification index' means the DNA identification record system for New York state established pursuant to this article." N.Y. Exec. Law § 995(6).

In addition to creating a single, statewide DNA index, Article 49-B identifies the people who must

submit a DNA sample for inclusion in the index—any "designated offender" convicted of a crime

set forth in the statute—and lays out the procedures for collecting such samples:

- "Any designated offender subsequent to conviction and sentencing for a crime specified in subdivision seven of section nine hundred ninety-five of this article, shall be required to provide a sample appropriate for DNA testing to determine identification characteristics specific to such person and to be included in a state DNA identification index pursuant to this article." N.Y. Exec. Law § 995-c(3)(a).
- "'Designated offender' means a person convicted of any felony defined in any chapter of the laws of the state or any misdemeanor defined in the penal law except: (a) a person convicted of prostitution under section 230.00 of the penal law, or (b) a person whose participation in the offense is determined by a court to have been a result of having been a victim of sex trafficking under section 230.34 of the penal law, sex trafficking of a child under section 230.34-a of the penal law, or trafficking in persons under the trafficking victims protection act." N.Y. Exec. Law § 995(7).

Finally, Article 49-B creates the Commission on Forensic Science to regulate the operation of the

state DNA index and accredit state and local DNA laboratories that perform forensic DNA testing.

*See* N.Y. Exec. Law §§ 995-a, 995-b.

2

## ARGUMENT

The Court requested that the parties submit argument on the question of whether the doctrine of *Pullman* abstention is applicable to this case. The *Pullman* abstention doctrine holds that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236 (1984) (citing *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 499-500 (1941)). *Pullman* abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 385 (2d Cir. 2000) (internal quotations and citations omitted). In Section 1983 civil rights cases, like here, that duty to adjudicate "has been repeatedly recognized as carrying special force" because Congress specifically imposed the duty on federal courts "'to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims.'" *McRedmond v. Wilson*, 533 F.2d 757, 760 (2d Cir. 1976) (quoting *Zwickler v. Koota*, 389 U.S. 241, 248 (1967)). As a result, abstention is "the exception," while the exercise of jurisdiction is "the rule." *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 593 (2d Cir. 1989) (citation omitted).

In the Second Circuit, *Pullman* abstention "may be appropriate" when all of the following three conditions are met: "(1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible to an interpretation by a state court that would avoid or modify the federal constitutional issue." *Vermont Right to Life Comm., Inc.*, 221 F.3d at 385 (internal quotations and citation omitted). "Satisfaction of all three criteria does not automatically require abstention, however," because "important federal rights can outweigh the interests underlying the *Pullman* doctrine." *Id.*

(internal quotations and citations omitted). Here, none of these three conditions are met. First, the resolution of the plaintiffs' Fourth Amendment claim clearly depends on the application of Fourth Amendment jurisprudence, not on an interpretation of Article 49-B. Second, Article 49-B authorizes the creation of a single, statewide DNA index, and there are no ambiguous terms in the statute that can be construed to authorize the City's Suspect Index. Third, there is no interpretation of Article 49-B that would avoid adjudication of or materially alter the constitutional claim. As a result, this Court should find that the *Pullman* abstention doctrine is inapplicable here.

## I.   THE RESOLUTION OF PLAINTIFFS' FOURTH AMENDMENT CLAIM DOES NOT DEPEND ON AN INTERPRETATION OF THEIR STATE LAW CLAIM.

*Pullman* abstention is clearly inapplicable here because the second condition is not met: plaintiffs' Fourth Amendment unreasonable search claim does not "depend on" the resolution of their state law claim. *See Vermont Right to Life Comm., Inc.*, 221 F.3d at 385. The second *Pullman* condition "requires that the constitutional issue be logically dependent on resolution of the state law issue." *Canaday v. Koch*, 608 F. Supp. 1460, 1466–67 (S.D.N.Y. 1985), *aff'd sub nom. Cannady v. Valentin*, 768 F.2d 501 (2d Cir. 1985). Where, as here, "[i]t is not logically necessary to decide the state law issues first, before reaching the constitutional claim . . . the constitutional claim is alternative to, rather than dependent upon, the state law claims." *Id.* (finding *Pullman* abstention inapplicable because "no such logical dependency exists in this case" between plaintiffs' equal protection claims and their state law claims); *see also United Fence*, 878 F.2d at 596 (same).

In cases involving analogous state law preemption claims, federal courts have routinely found that the constitutional claims are not dependent on the interpretation of state law preemption. In *Dubin*, for example, the county defendants argued that *Pullman* abstention applied to a case challenging a local county ordinance on state law preemption and constitutional grounds. *Dubin*

*v. Cnty. of Nassau*, 277 F. Supp. 3d 366, 381 (E.D.N.Y. 2017). But the district court disagreed "because resolution of plaintiffs' federal claims does not depend upon the Court's construction of New York State law." *Id.* at 382 (citing *Canaday*, 608 F.Supp. at 1460). It explained that "*Pullman* abstention . . . is inapplicable here because resolving plaintiffs' New York State law claims is not a condition precedent to adjudicating their federal constitutional challenges." *Id.* at 384; *see also Moore v. Cnty. of Suffolk*, 851 F. Supp. 2d 447, 457-58 (E.D.N.Y. 2012) (declining to abstain under *Pullman* because the preemption claim "has no bearing on the resolution of the constitutional issues.").

Here, plaintiffs' Fourth Amendment claim depends on whether this Court determines that the City's policy and practice of secretly collecting and analyzing people's DNA without a warrant or court order and maintaining it in the Suspect Index constitutes unreasonable searches. That determination is rooted in Fourth Amendment jurisprudence, not state law. *See, e.g.*, *United States v. Amerson*, 483 F.3d 73 (2d Cir. 2007) (describing and applying the relevant jurisprudential test to balance the plaintiffs' privacy interests against the government's interest). To be sure, state law is relevant in that DNA indexing statutes that provide "adequate safeguards" have been found to reduce the privacy interests that must be balanced against the government's interest. *Id.* at 85. And the unauthorized and unregulated nature of the defendants' DNA searches only serves to heighten the privacy interests at stake here. But even if the City's DNA indexing practice were authorized by statute, this Court would be faced with the same task—applying Fourth Amendment jurisprudence to determine if these searches are unreasonable. *See, e.g.*, *Nicholas,* 430 F.3d at 669-72 (applying Fourth Amendment jurisprudence to determine whether Article 49-B's DNA indexing requirements for people convicted of felonies is unreasonable); *Amerson*, 483 F.3d 83-89 (applying Fourth Amendment jurisprudence to determine whether a federal statute's DNA

indexing requirements for probationers is unreasonable). Thus, the second *Pullman* condition cannot be met here. *See Flores v. Stanford*, No. 18 CV 2468 (VB), 2019 WL 4572703, at *6 (S.D.N.Y. Sept. 20, 2019) (finding the second *Pullman* condition is not met because "plaintiffs' federal constitutional claims do not depend on an interpretation of New York State law—rather, they depend on an interpretation and application of federal Eighth Amendment jurisprudence."); *see also C.R. Corps v. Pestana*, No. 21 CIV. 9128 (VM), 2022 WL 1422852, at *6–7 (S.D.N.Y. May 5, 2022) (finding the second *Pullman* condition is not met because "resolution of the constitutional issue does not depend on the interpretation of state law; it depends on interpretation of federal jurisprudence embodying the First Amendment."); *cf. Jayaraj v. Scappini*, 66 F.3d 36, 40 (2d Cir. 1995) (finding *Pullman* abstention is warranted where the court had to determine whether conflicting statutes and regulations established a "property interest" before resolving plaintiffs' due process claim).

## II.   ARTICLE 49-B CONTAINS NO AMBIGUOUS TERMS THAT COULD BE CONSTRUED AS AUTHORIZING THE CITY'S SUSPECT INDEX.

The first *Pullman* condition is also not met here because there are no ambiguous terms within Article 49-B that could be construed to provide the defendants authority to create and operate the Suspect Index. As the Supreme Court explained, "[w]here there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim*." Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971) (declining to apply *Pullman* abstention to a facial challenge of a statute because "the [] Act does not contain any provision whatsoever for notice and hearing. There is no ambiguity in the state statute."). The first *Pullman* "requirement that the state law must be ambiguous before federal courts abstain ensures that federal courts avoid a decision that guesses at what a state court will do in the future, since a federal court's rough forecast may later be displaced by an authoritative state

adjudication." *United Fence*, 878 F.2d at 595 (citing *Pullman,* 312 U.S. at 500). Thus, courts "should abstain only when the chance of error is reasonably certain, and then only when abstention reduces the likelihood of error." *United Fence,* 878 F.2d at 595.

In *United Fence*, the Second Circuit addressed a construction company's suit challenging New York's affirmative action program designed to increase minority and women participation in highway construction contracts as violative of the Fourteenth Amendment's equal protection clause. *Id.* at 589. The defendants argued that the district court's decision to apply *Pullman* abstention was appropriate because "whether the state legislature properly authorized [their] actions remains an open question" and the resolution of this unsettled issue of New York's Executive Law would alter the plaintiffs' constitutional claim. *Id.* at 594. The Second Circuit disagreed and found that "[w]hether the [affirmative action] program was properly authorized . . . was not so knotty that a federal court decision would have been merely a speculative forecast." *Id.* at 595 (citations omitted). Because "[a]uthorization issues are part of the business of courts," it reasoned that "[t]he scope of the abstention doctrine would become inordinately broad were the phrase 'far from clear' to be construed as meaning merely 'difficult to decide.'" *Id.* As a result, it reversed the district court's decision because "the federal court is as competent as its state counterpart to evaluate the validity of Article 15–A [of the Executive Law]." *Id.* at 596; *see also Langer v. New York State Off. of Ct. Admin.*, No. 98-CV-0413E(F), 1998 WL 799153, at *4–5 (W.D.N.Y. Nov. 13, 1998) (same).

Here, the language in Article 49-B plainly authorizes a single, statewide DNA index, *see supra* at 2, making it unnecessary for this Court to "forecast" whether the statute also authorizes the City's Suspect Index or fails to preempt it. The plain language of Article 49-B contains no provisions that authorize or could be construed to authorize the NYPD or OCME to create and

operate an index for people suspected of crimes. *See supra* at 2. This Court need not engage in "intricate or penetrating statutory interpretation best left to the state," *see McRedmond*, 533 F.2d at 762, because, as in *United Fence*, whether Article 49-B authorizes the Suspect Index is a straightforward question that is no more well-suited for state courts than this Court.

In their motion to dismiss, defendants relied on two decisions for the proposition that state courts have held that Article 49-B does not prohibit OCME from maintaining the Suspect Index. *See* Defs' Mem. of Law at 19 (ECF No. 47). Those cases in fact concede that "nothing in [the state law] *authorizes* local public DNA laboratories to 'index' DNA profiles." *People v. Belliard*, 70 Misc. 3d 965, 970 (Sup. Ct. N.Y. Cnty. 2020) (emphasis added)*; accord People v. White*, 60 Misc. 3d 304, 307 (Sup. Ct. Bronx Cnty. 2018) (recognizing that the provisions of Article 49-B "only allow a DNA sample to be included in the New York State DNA data bank upon conviction of a designated offense").[1] Despite this, both cases mistakenly conclude that local indexes are permissible because the state law "contains no prohibition against such indexing either." *Belliard*, 70 Misc. 3d at 970; *White*, 60 Misc. 3d at 307 (same).[2] The parties plainly dispute this legal conclusion of whether the lack of express authorization and regulation means the Suspect Index is unlawful under state law, but resolving it is no part of Plaintiffs' constitutional claim. The undisputed and unambiguous fact remains that state law does not provide the sort of robust state

---

[1] Notably, following *Samy F. v Fabrizio*, 176 A.D.3d 44 (1st Dep't 2019), the same judge in *White* reversed course in a subsequent case and found that the Executive Law prohibited the inclusion a defendant's DNA in the Suspect Index. *People v. Fisher*, 71 Misc. 3d 1051, 1056–57 (Sup. Ct. N.Y. Cnty. 2021).

[2] That approach—reading the lack of statutory authorization as meaningless without an explicit prohibition—has recently been repudiated by New York's Appellate Division. *Matter of Stevens v. New York State Div. of Crim. Just. Servs.*, 206 A.D.3d 88, 107 (1st Dep't 2022) (holding that state agency officials "acted outside the scope of their authority in promulgating the familial DNA regulations" absent statutory authorization to do so). Moreover, in a separate case, New York's Appellate Division also found that "the Executive Law clearly applies to an LDIS, like OCME's. By establishing a 'state' DNA identification index, the state has created a 'comprehensive and detailed regulatory scheme' with regard to the subject matter. OCME's operations fall firmly within the Executive Law umbrella and 'must yield to that of the State in regulating that field.'" *Samy F. v Fabrizio*, 176 A.D.3d 44, 51-52 (1st Dep't 2019) (citing *People v. Diack*, 24 N.Y.3d 674, 677 (2015)).

regulatory framework for the Suspect Index that has been considered relevant in assessing the privacy interest for Fourth Amendment purposes.

With no ambiguity present in Article 49-B, this Court should find *Pullman* abstention inapplicable here. Abstention would serve no purpose because state courts would have to ignore the plain language of Article 49-B and supply terms that do not exist in the statute to find that it authorizes the Suspect Index. *See Naprstek v. City of Norwich*, 545 F.2d 815, 816–18 (2d Cir. 1976) (holding that because state courts are "powerless to supply" missing terms in a clearly worded statute, "[a]bstention will avail the defendants nothing and is not appropriate under these circumstances."); *see also Moe v. Dinkins*, 635 F.2d 1045, 1048 (2d Cir. 1980) (same).

## III.   NO INTERPRETATION OF ARTICLE 49-B WOULD ELIMINATE THE NEED TO ADJUDICATE PLAINTIFFS' FOURTH AMENDMENT CLAIM.

Even if a state court found that the City's Suspect Index violates Article 49-B, the third *Pullman* condition would not be met because the indexing of unsuspecting people's DNA without a warrant or court order is only one search under the City's policy and practice that is challenged here. *See supra* at 2. The City's practice of collecting and analyzing people's DNA to compare it to crime scene DNA would remain issues in the case, even if the City could no longer operate the Suspect Index. As such, the "special circumstances" required for a federal court to apply *Pullman* abstention cannot exist "when the state court construction of the statute will not and cannot avoid the necessity for constitutional adjudication." *Naprstek v. City of Norwich*, 545 F.2d 815, 817–18 (2d Cir. 1976) (citing *Kusper v. Pontikes*, 414 U.S. 51, 55 (1973)); *see also Baggett v. Bullitt*, 377 U.S. 360, 378 (1964) (finding abstention unwarranted because constitutional issues would still exist and that would "not serv[e] the abstention-justifying end of avoiding constitutional adjudication.").

In addition to not mooting or avoiding plaintiffs' constitutional claim, abstention would

not "materially alter" their claim either. *See Ohio Bureau of Emp't Servs. v. Hodory*, 431 U.S. 471, 481 (1977); *see also Dubin*, 277 F. Supp. 3d at 379. Plaintiffs' Fourth Amendment claim challenges the search of their DNA without a warrant or court order, and that core harm would persist through the City's continued practice of secretly collecting and analyzing people's DNA even if the City's Suspect Index were to be found illegal under state law.

*        *        *

Finally, while none of the *Pullman* conditions are met here, even if they were, "important federal rights can outweigh the interests underlying the *Pullman* doctrine." *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 100 (2d Cir. 2004) (internal quotations and citations omitted); *see also United Fence*, 878 F.2d at 593 (citing cases and explaining that, since *Pullman*, "subsequent decisions have clarified that the[] policies [underlying *Pullman* abstention] are outweighed by countervailing concerns when a federal court is asked to consider claims involving important federal rights."). The Fourth Amendment's prohibition against "unreasonable searches and seizures" serves "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 528 (1967). That right to be free from the government's arbitrary searches is as important as any federal right and weighs heavily against abstention. *See, e.g., Hartford Courant Co.*, 380 F.3d at 100 (finding that "the weight of the First Amendment issues involved counsels against abstaining.")

## **CONCLUSION**

For the foregoing reasons, the plaintiffs respectfully request that this Court find that the doctrine of *Pullman* abstention is not applicable to this case.

Dated: February 3, 2023
    New York, N.Y.

Respectfully submitted,

*s/ Philip Desgranges*

_____

Philip Desgranges
J. David Pollock
Paula Garcia-Salazar*
Anna Blondell
Allison Durkin
Peter Laumann
Lisa Freeman
Corey Stoughton
The Legal Aid Society
199 Water Street
New York, NY 10038
212-577-3398
pdesgranges@legal-aid.org
jpollock@legal-aid.org
pgarciasalazar@legal-aid.org
ablondell@legal-aid.org
adurkin_fellow@legal-aid.org
plaumann@legal-aid.org
lafreeman@legal-aid.org
cstoughton@legal-aid.org

*Admission to the SDNY bar pending

*Attorneys for Plaintiffs*