

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**MARILYN RICHTER**
**(212) 356-2083**

February 3, 2023

The Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re: *Leslie v. City of New York,* 22 cv 2305

Your Honor:

This letter is submitted by Defendants, pursuant to the Court's order dated January 20, 2023 (ECF No.64), directing the parties to address whether *Pullman* abstention is applicable to this case. This doctrine was established by *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). There a state agency issued an administrative order that was challenged in federal court. The plaintiffs sought injunctive and declaratory relief and claimed that the order was unauthorized under state law; they also claimed that it violated several provisions of the U.S. Constitution. The Supreme Court reviewed the relevant state law and concluded that whether the order was authorized under state law was unclear. *Id*. at 499. Only the state courts could provide a definitive ruling on whether state law authorized the order. If the order was unauthorized under state law, then rulings on the constitutional issues would be unnecessary.

The Court noted that a constitutional issue was raised that was both substantial and "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." *Id*. at 498. Although not explicitly stated, the reference was clearly to the equal protection claim, which concerned overt racial discrimination.

The Court also found that the requested relief – an injunction – was particularly problematic in these circumstances. "The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction…. Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies…." *Id*. at 500. Accordingly, there is "a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise

discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." (internal citations omitted). Id. at 501. This use of equitable powers contributes to "furthering the harmonious relation between state and federal authority". The Court found these policy considerations dispositive in deciding that the District Court should "stay its hand" and proceedings should be brought in the state courts for a definitive ruling on state law. *Id.* at 501-02 .

In this case, the alleged challenged practices concern: 1) police officers taking of biological samples of suspects and arrestees from discarded objects or with the person's consent, but without a warrant or court order, for purposes of forensic DNA analysis; 2) the forensic analysis of these samples to create DNA profiles by the New York City Office of the Chief Medical Examiner ("OCME"), and 3) the inclusion of these profiles in a computerized DNA Subject Index, maintained by OCME, where there are on-going comparisons of these profiles to DNA profiles obtained from crime scene evidence

For purposes of abstention analysis, this case is very similar to *Pullman* and raises the same concerns that were addressed therein. For the reasons and evaluation of the *Pullman* factors discussed in more detail *infra*, Defendants urge this Court to determine that Plaintiffs should litigate their state claims in state court, so that the unsettled questions of state law may be resolved.

The first factor a court must consider when determining whether *Pullman* abstention is appropriate is whether there is an undecided issue of state law. The Supreme Court stressed that "[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies…" *Id.* at 500. In the instant matter, the Complaint asserts that officers' collection of biological samples of suspects and arrestees, from the individuals or from items they have discarded, as well as the forensic analysis of these collections, and the subsequent comparison of the resulting DNA profiles to DNA profiles from crime scene evidence, violate state laws, in addition to the Fourth Amendment. Specifically, the Complaint claims these practices violate N.Y. Executive Law Article 49-B, § 995, *et seq.* (and its implementing regulations) (Complaint ¶¶ 32, 33, 36) and N.Y. Civil Rights Law § 79-l (Complaint ¶ 27).

Article 49-B, *inter alia*, established the New York State DNA Identification Index ("SDIS"), which is the DNA identification record system for New York State." and sets out procedures for obtaining biological samples from convicted offenders, which are then analyzed. N.Y. Exec. Law § 995(6). The resulting DNA profiles are then placed in a State computerized DNA Known Index, where there are on-going comparisons of these DNA profiles to DNA profiles from crime scene evidence. Executive Law § 995-c. The Complaint asserts that because Article 49-B only specifically addresses the establishment of the State DNA Identification Index of convicted offenders ("SDIS"), any Local DNA Index System ("LDIS") established by a municipality is unauthorized by Article 49-B and therefore unlawful..

Civil Rights Law § 79-l, titled "Confidentiality of Records of Genetic Tests," concerns genetic testing of biological material and requires written informed consent or a court order. N.Y. Civ. Rights Law § 79-l(2).

The meaning and applicability of both these state statutes is unsettled. The New York Court of Appeals has not ruled on these issues. Specifically, as discussed in Defendants' Motion

to Dismiss, the question of whether Article 49-B prohibits the maintenance of OCME's Subject Index has been the subject of many conflicting rulings by the lower state courts.

As for Civil Rights Law § 79-l, whether it is applicable to criminal investigations and proceedings is unsettled. Shepdardizing the statute produces only three cases. *Reynolds v. Sielaff*, 2009 U.S. Dist. LEXIS 23293, *3 (S.D.N.Y. Mar. 23, 2009), concerned the production in class action discovery of medical records, including predisposition genetic testing information, under a protective order. *Bin Sultan Bin Abdul-Aziz Al Saud v. N.Y. & Presbyterian Hosp.*, 2019 NY Slip Op 32153(U), 2019 N.Y. Misc. LEXIS 4044, *9 (Sup. Ct. N.Y. Co. Jul. 15, 2019), concerned pre-action disclosure for use in a paternity case of genetic test results contained in medical records. The only case that concerned forensic DNA is *People v. Rodriguez*, 196 Misc. 2d 217 (Sup. Ct. Kings Co. 2003). The court relied primarily on Executive Law § 995-d in holding that OCME could only compare the defendant's DNA profile to crime scene DNA profiles from the crime for which he was charged. The court also cited section 79-l, and provisions of the Insurance Law and the Public Health Law and concluded that an individual has a property right in his DNA test result and in its unauthorized disclosure.

However, *People v. Debraux*, 50 Misc. 3d 247, 262 (Sup. Ct. N.Y. Co. 2015) rejected the holding in *Rodriguez* and stated that the majority of subsequent court decisions addressing *Rodriguez* had also rejected it. *Debraux* held that Executive Law § 995-d was not violated by OCME's Subject Index and allowed the defendant's DNA profile to be placed in OCME's Subject Index. The decision does not mention section 79-l.

In addition, Plaintiffs seek to proceed as representatives of a certified class asserting both the state and federal claims. Class certification would exacerbate the state-federal friction that *Pullman* abstention is intended to prevent. The Court would be required to resolve by injunction any issues that arise under state law. *Ryan v. Koch*, No. 82 Civ. 3642 (PNL), 1983 U.S. Dist. LEXIS 15632, at *11-12 (S.D.N.Y. July 7, 1983).

The second *Pullman* factor is also present here. As this Court noted in its order, abstention is appropriate "'when an unsettled question of state law might eliminate the need to decide the federal constitutional question or materially alter the way the federal court would view that question.' 17A Moore's Federal Practice - Civil § 122.20".

The doctrine of constitutional avoidance remains foundational. As the Second Circuit has stated:

> It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions. See, e.g., Spector Motor Serv., Inc. v. McLaughlin, 323 U.S. 101, 105, 89 L. Ed. 101, 65 S. Ct. 152 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."); Ashwander v. TVA, 297 U.S. 288, 347, 80 L. Ed. 688, 56 S. Ct. 466 (1936) (Brandeis, J., concurring) ("If a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."); Clinton v. Jones, 520 U.S. 681, 690, 137 L. Ed. 2d 945, 117 S. Ct. 1636 (1997) ("We have often stressed the

3

importance of avoiding the premature adjudication of constitutional questions.").

*Allstate Ins. Co. v. Serio*, 261 F.3d 143, 149-50 (2d Cir. 2001).

If Plaintiffs prevailed on some or all of their state law claims, then the Fourth Amendment issues would be moot, or materially altered, and unnecessary adjudication of constitutional claims would be avoided.  If Plaintiffs did not prevail, in whole or in part, on their state law claims, then Plaintiffs would have the right to return to this Court and litigate any remaining Fourth Amendment issues.  As the Supreme Court has stated, "abstention 'does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise.' Harrison v. NAACP, 360 U.S. 167, 177; accord, Louisiana P. & L. Co. v. Thibodaux, supra, 360 U.S., at 29."  *England v. La. State Bd. of Med. Exam'rs,* 375 U.S. 411, 416 (1964).

As a procedural matter, the federal litigation is generally stayed pending the resolution of the state law issues.  "We have required deferral, causing a federal court to "stay its hands," when a constitutional issue in the federal action will be mooted or presented in a different posture following conclusion of the state-court case. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 501, 85 L. Ed. 971, 61 S. Ct. 643 (1941)."  *Growe v. Emison*, 507 U.S. 25, 32 (1993).

There is, however, a countervailing policy which provides that federal courts should exercise jurisdiction and adjudicate federal constitutional claims when plaintiffs have chosen that forum, and that this is particularly true in cases brought pursuant to 42 U.S.C. § 1983, as is this case.

See, *McRedmond v. Wilson*, 533 F.2d 757, 760-61 (2d Cir. 1976)(summarizing Supreme Court cases).

> To acknowledge the tension between these two policies, McRedmond created a three-part test for determining whether abstention may be invoked.    In general, the three essential conditions for invocation of the doctrine of abstention are that the state statute be unclear or the issue of state law be uncertain, Harman v. Forssenius, supra, 380 U.S. at 534, that resolution of the federal issue depend upon the interpretation to be given to the state law, Wright v. McMann, 387 F.2d 519, 525 (2d Cir. 1967), and that the state law be susceptible of an interpretation that would avoid or modify the federal constitutional issue. In such circumstances abstention will be upheld. As we recently recognized in Reid v. Board of Education of City of New York, 453 F.2d 238 (2d Cir. 1971), although these conditions precedent do appear to be strict on their face, they offer some room for play in the joints.

*Id.* at 761.

Almost fifty years later, *McRedmond* is still valid authority.  *See, e.g, Doe v. Putnam* Cty., No. 16-CV-08191 (PMH), 2020 U.S. Dist. LEXIS 222885, at *17-18 (S.D.N.Y. Nov. 30, 2020) _.

Applying the *McRedmond* three-part test, this case clearly meets the first and third requirements for abstention. As to the first prong, the state law issues raised are uncertain. The statutes are not clear on the issues raised, and as discussed above, there are no New York Court of Appeals determinations and the lower court decisions have been conflicting on Executive Law Article 49-B and almost non-existent on Civil Rights Law § 79-l. As to the third requirement, while Defendants do not agree with Plaintiffs' position on the state law issues, the conflicting lower court decisions on Article 49-B, and the one lower court decision citing section 79-l, show that these statutes are susceptible to an interpretation that would avoid or modify the Fourth Amendment issue.

The second requirement is more complicated because the law is more complicated. McRedmond states "that resolution of the federal constitutional issue depends upon the interpretation to be given to the state law."   In *Pullman,* resolution of the constitutional issues depended upon a determination of the state law issue, which was whether the Railroad Commission had the power (i.e., were they authorized) pursuant to a state statute to take the challenged action (issuance of the order). The statute was not challenged. *Pullman v. Rail*  33 F, Supp. 675 (1940).  If they were so authorized, then the question of whether their conduct comported with the constitution would have to be adjudicated. If they were not, then their action was invalid  under state law and there would be no need for constitutional adjudication.

A similar situation is presented here.  Plaintiffs' primary state law claim is that because Executive Law Article 49-B does not grant specific authority for 1), municipalities to maintain LDIS, and 2) to maintain profiles in LDIS beyond those of convicted offenders, any forensic DNA analysis performed using these samples is unlawful.  If Plaintiffs are correct that Defendants' actions must be explicitly authorized by the statute and that absent such authorization, Defendants' actions are invalid, then there is no need to reach the constitutional issues.  If, however, Article 49-B does not require such authorization, then the constitutional issues must be decided.

However, it should be acknowledged that there are cases that construe the second requirement to mean that the state law issue has to be decided before the federal issue can be reached.   An example would be when an unclear state statute is challenged as violating a federal constitutional provision.  That is not the case here nor was it in *Pullman.* The constitutional issue in *Pullman* could have been decided without reaching the state issue, but the Supreme Court found Pullman abstention appropriate for the important reasons discussed above.  Ironically the Second Circuit cites *Pullman*

for its construction of the second requirement.  *See, e.g., Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376, 384 (2d Cir. 2000).

The Third *Pullman* factor is met here.  The Fourth Amendment issues are substantial, and the balancing of individuals' right to privacy and the need for effective law enforcement, including the identification and prosecution of criminal offenders, raises sensitive issues of social policy.

The Fourth *Pullman* factor is that the Complaint seeks injunctive relief.  Indeed, the injunctive relief sought is extremely vague and by its terms potentially extremely broad and accordingly potentially poses a greater risk of creating friction in state-federal relations than the injunction in *Pullman*. The Plaintiffs ask the Court to "Permanently enjoin the Defendants from

subjecting the Plaintiffs and the putative class to the unconstitutional and unlawful practices described here". (Complaint, Relief ¶ e).

Another factor here that favors *Pullman* abstention is that law enforcement, including crime solving and crime prevention which are the objectives of the challenged practices, is a traditional area of state concern and a core function of state government. The Court has long cautioned against interfering with matters with such a nexus to criminal law, unless extraordinary circumstances present themselves. *See Fenner v. Boykin,* 271 U.S. 240, 46 S. Ct. 492 (1926); *Spielman Motor Sales Co. v. Dodge*, 295 U.S. 89, 55 S. Ct. 678 (1935). Plaintiffs have not met such a high standard here.  In these traditional and core functions, the state has greater expertise than the federal judiciary and the potential for increasing state-federal friction is greater.

> We defer to state primacy in areas of traditional state concern, such as family law, *Id.* at 435, not only out of comity but also because the state is often far more expert than are we at understanding the implications of each decision in its practiced field, id. at 429-30."  (citing Moore v. Sims, 442 U.S. 415, 430, 60 L. Ed. 2d 994, 99 S. Ct. 2371 (1979)).

*Nicholson v. Scoppetta*, 344 F.3d 154, 168 (2d Cir. 2003).

> …the Supreme Court cases dealing with certification suggest that the practice is especially desirable where the challenged legislation goes to the basic sovereign functions of state government. See Tunick, 209 F.3d at 77 (noting the distinction, implicit in the Supreme Court's cases, between state laws that do and do not "center on core functions of state governments"). In such cases, the potential for friction between state and federal government increases, and the threat to principles of federalism, if certification  is not sought, is particularly strong.[1]

*Allstate Ins. Co.,* 261 F.3d at 154.

 The often-cited disadvantage of Pullman abstention is that it generally results in delay and additional costs, see, e.g., *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997).  The significance of these disadvantages, however, should be analyzed on a case-by-case basis.  The Second Circuit has held in a fairly recent case that the District Court should have invoked Pullman abstention and found that because additional development of the record was required, the delay and cost factors were not weighty, and remanded the case to the District Court. *Expressions Hair Design v. Schneiderman*, 808 F.3d 118, 140-141 (2d Cir. 2015),

---

[1]  "Certification today covers territory once dominated by a deferral device called '*Pullman* abstention'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 75 (1997).  The procedure permits federal courts to certify state-law questions directly to the state's highest court.  The availability of certification is determined by state law. *Id.* at 76.  New York does not permit certification by U.S. District Courts.  22 NYCRR § 500.27(a).

rev'd on other grounds, *Expressions Hair Design v. Schneiderman*, 581 U.S. 37 (2017) (subsequent history omitted).

These factors also should not be very significant in this case. Here, the federal case is in its initial phase, as opposed to the posture in *Expressions* where the case was already on appeal. Plaintiffs here seek class certification, and Fourth Amendment claims are usually very dependent on specific facts which will presumably involve substantial discovery, including depositions. Thus, the federal litigation would entail significant time and cost. By contrast, the state law issues likely could be resolved on summary judgment motions on undisputed facts, including written policies already known to the parties, as demonstrated by Plaintiffs' submissions in this case. Accordingly, it might be less expensive and involve little if any additional delay to litigate the state law issues in state court, instead of proceeding at this juncture in this Court with the Fourth Amendment claim.

It should be stressed that *Pullman* abstention is not precluded in section 1983 and civil rights cases when the abstention test is satisfied. Most recently, in *Expressions*, 808 F.3d at 140-41, the Second Circuit held that the District Court should have invoked *Pullman* abstention. The state law that was being challenged as applied was unclear and had not been construed by the New York courts. The federal courts could not hold the statute unconstitutional before the state courts had an opportunity to apply a limiting construction that would avoid the constitutional adjudication. *Id*. at 139-40. In *Winters v. Lavine*, 575 F.2d 46, 69-72 (2d Cir. 1978), a First Amendment religion case, the Second Circuit found abstention appropriate because the state statute was unclear, resolution of the state issue might completely avoid constitutional adjudication, and there was already a pending state case, brought by the same plaintiff, which might resolve the issue and made the delay and inconvenience generally inherent in abstention inapplicable.

In summary Defendants believe that is an appropriate case for the exercise of the Court's discretionary invocation of abstention.

Respectfully submitted,

/s/

Marilyn Richter
Assistant Corporation Counsel