UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

SHAKIRA LESLIE; and SHAMILL BURGOS; on behalf of themselves and all others similarly situated,

                                                   Plaintiffs,

v.

CITY OF NEW YORK; KEECHANT SEWELL, Police Commissioner for the City of New York, in her official capacity; KENNETH COREY, Chief of Department for the New York City Police Department, in his official capacity; JAMES ESSIG, Chief of Detectives for the New York City Police Department, in his official capacity; EMANUEL KATRANAKIS, Deputy Chief in the Forensic Investigations Division of the New York City Police Department, in his official capacity; and DR. JASON GRAHAM, Acting Chief Medical Examiner for the City of New York, in his official capacity;

                                                   Defendants.

ANSWER

22 cv 02305 (NRB)

------------------------------------------------------------------- X

        Defendants, the City of New York, Keechant Sewell, Police Commissioner for the City of New York, in her official capacity; Kenneth Corey, Chief of Department for the New York City Police Department, in his official capacity; James Essig, Chief of Detectives for the New York City Police Department, in his official capacity; Emanuel Katranakis, Deputy Chief in the Forensic Investigations Division of the New York City Police Department, in his official capacity; and Dr. Jason Graham, Acting Chief Medical Examiner for the City of New York, in his official capacity, by their attorney Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, for their Answer to the Complaint, respectfully allege as follows:

        1.    Deny the allegations set forth in paragraph "1" of the Complaint, and affirmatively state that the New York City Police Department ("the NYPD") obtains DNA from

known individuals through a court order or consent or from items that have been abandoned or discarded (referred to as an abandonment sample).

       2.       Deny the allegations set forth in paragraph "2" of the Complaint, and affirmatively state that in some instances items discarded or abandoned by arrestees or suspects, are collected by NYPD detectives using procedures designed to prevent *inter alia*, contamination of these items, except deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the last sentence of paragraph "2" except deny that there is a "Suspect Index" as described in paragraph "2" and affirmatively state that OCME's Subject Index contains DNA profiles developed from samples obtained by court order, consent or abandonment.

       3.       Deny the allegations set forth in paragraph "3" of the Complaint and affirmatively state the since July 2020, OCME will not test abandonment samples for DNA unless forensic (i.e., crime scene) evidence for the associated crime for which the person is under arrest or suspicion is also provided to OCME for DNA testing.

       4.       Deny the allegations set forth in paragraph "4" of the Complaint, and affirmatively state that OCME's Local DNA Index System ("LDIS") which contains the Subject Index is subject to the independent oversight of the New York State Commission on Forensic Science and that all of OCME's operations, including its Subject Index are regularly assessed and accredited by the FBI QAS for Forensic DNA Testing Laboratories, the American National Accreditation Board, and the New York State Forensic Laboratory Accreditation Program.

       5.       Deny the allegations set forth in paragraph "5" of the Complaint and affirmatively state that the genealogical investigative technique referred to therein does not utilize DNA profiles in the Subject Index and the only role of OCME in the genealogical investigative technique referred to therein is to provide DNA extracts from forensic (crime scene) evidence that

is then analyzed by a federal agency (e.g., the FBI), or one of two private genetics laboratories certified by New York State to perform this type of analysis, and the comparison is to DNA profiles maintained in a commercial private company's genealogical database which is composed of DNA from individuals who voluntarily submitted their DNA to this database and opted-in to law enforcement searches.

6. Deny the allegations set forth in paragraph "6" of the Complaint.

7. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph "7" of the Complaint. Deny the allegations in the second sentence of paragraph "7 of the Complaint and affirmatively state that in 2019 Plaintiff Leslie's DNA sample was taken from a cup she had abandoned and that after her DNA sample was analyzed and a DNA profile developed, Plaintiff Leslie's DNA profile was uploaded to the Subject Index where it was compared to other DNA profiles in OCME's LDIS, which contains, *inter alia*, the Forensic Index of DNA profiles from crime scenes and affirmatively state that on the recommendation of the NYPD, those comparisons ceased on May 13, 2022 and Plaintiff Leslie's DNA Profile was removed from the Subject Index on May 19, 2022, and that in the normal course of the NYPD's periodic review these comparisons would have ceased in or about June 2022.

8. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph "8" of the Complaint. Deny the allegations in the second sentence of paragraph "8" of the Complaint and affirmatively state that in 2019 Plaintiff Burgos' DNA sample was taken from a cigarette butt he had abandoned and that after his DNA sample was analyzed and a DNA profile developed, Plaintiff Burgos' DNA profile was uploaded to the Subject Index where it was compared to other DNA profiles in OCME's LDIS which

contains, *inter alia*, the Forensic Index of DNA profiles from crime scenes and affirmatively state that on the recommendation of the NYPD those comparisons ceased on May 13, 2022 and Plaintiff Burgos' DNA Profile was removed from the Subject Index on May 19, 2022 and that in the normal course of the NYPD's periodic review these comparisons would have ceased in or about January 2023.

      9.      Deny the allegations set forth in paragraph "9" of the Complaint except admit the allegations in the first two sentences of paragraph "9."

      10.      Admit the allegations set forth in paragraph "10" of the Complaint except deny that Commissioner Sewell has final policymaking authority in all matters with respect to the NYPD.

      11.      Admit the al legations set forth in paragraph "11" of the Complaint except deny that Kenneth Corey is now the Chief of Department and affirmatively state that the Chief of Department is  now Chief Jeffrey Maddrey .

      12.      Admit the allegations set forth in paragraph "12" of the Complaint except deny that Chief Essig sets all policies for the Detective Bureau and its specialized divisions.  .

      13.      Admit the allegations set forth in paragraph "13" of the Complaint except deny that Emanuel Katranakis is now Deputy Chief of the Forensic Investigations Division and deny that the person holding this position sets all polices for the Forensic Investigations Division and affirmatively state that Deputy Chief Brian McGee now holds this position.

      14.      Deny the allegations in paragraph "14" of the Complaint and affirmatively state that Dr. Jason Graham is now the Chief Medical Examiner for OCME and admit that he is sued in his official capacity.

15. Deny the allegations set forth in paragraph "15" of the Complaint and respectfully refer the Court to the Detective Guide provisions referenced therein for a complete and accurate statement of their meaning and content.

16. Deny the allegations set forth in paragraph "16" of the Complaint and respectfully refer the Court to the Detective Guide provisions referenced therein for a complete and accurate statement of their meaning and content.

17. Deny the allegations set forth in paragraph "17" of the Complaint and respectfully refer the Court to the Detective Guide provisions referenced therein for a complete and accurate statement of their meaning and content.

18. Deny the allegations in paragraph "18" of the Complaint and affirmatively state that abandoned items are sent by the NYPD to OCME for DNA testing, and that this is done in a small percentage of investigations and arrests and that the large majority of the individuals who abandoned items that were then sent to OCME for DNA testing are designated offenders whose DNA profiles are also in the New York State DNA database pursuant to N.Y. Executive Law § 995(7).

19. Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph "19" of the Complaint.

20. Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph "20" of the Complaint.

21. Deny the allegations set forth in paragraph "21" of the Complaint and affirmatively state that in some circumstances NYPD detectives obtain items abandoned by adults who are suspects or arrestees and if there is available forensic evidence from the associated crime they may request that OCME analyze DNA from the abandoned item and from the crime scene

and respectfully refer the Court to the Detective Guide instructions referenced therein for a complete and accurate statement of their meaning and content.

22. Deny the allegations set forth in paragraph "22" of the Complaint and affirmatively state that when NYPD detectives retrieve abandoned items the consent of the person who abandoned the item (or the person's parent or guardian if the person is a minor) is not required for retrieval of the abandoned item nor for the request that OCME analyze DNA from the item.

23. Deny the allegations set forth in paragraph "23" of the Complaint and affirmatively state that items that have been abandoned by arrestees and suspects may be sent by the NYPD to OCME which analyzes DNA on the abandoned items provided that there is also crime scene evidence from the associated crime available and that if there is no protective order then the DNA profiles from both the crime scene evidence and the abandoned item are uploaded into LDIS.

24. Deny the allegations set forth in paragraph "24" of the Complaint and affirmatively state that OCME officials are aware that the NYPD provides subject samples for DNA testing that were obtained through a court order, consent or abandonment and that many resulting DNA profiles are uploaded to the Subject Index of LDIS and respectfully refer the Court to the written testimony referenced in the second sentence of paragraph "24" for a complete and accurate statement of its meaning and content.

25. Deny the allegations set forth in paragraph "25" of the Complaint except deny knowledge and information sufficient to form a belief concerning the allegations about J.B.

26. Deny the allegations in paragraph "26" of the Complaint and respectfully refer the Court to the record of the Article 78 proceeding referenced therein for a complete and accurate statement of its meaning and content.

27. Deny the allegations set forth in paragraph "27" of the Complaint and respectfully refer the Court to the statute cited therein for a complete and accurate statement of its meaning and content.

28. Admit the allegations set forth in paragraph "28" of the Complaint except deny the allegations in the first sentence of paragraph "28" of the Complaint.

29. Admit the allegations set forth in the first sentence of paragraph "29" of the Complaint and deny knowledge and information sufficient to form a belief as to the truth of the allegations in the rest of paragraph "29." ,

30. Admit the allegations set forth in the first two sentences of paragraph "30" of the Complaint, deny knowledge and information sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph "30," and deny the allegations in the last two sentences of paragraph "30" and affirmatively state that the DNA profiles of persons who have been convicted of any felony or any misdemeanor in the Penal Law with the exception of convictions for prostitution offenses or convictions resulting from a person having been the victim of sex trafficking are required to be uploaded to New York State's SDIS.

31. Deny knowledge and information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of paragraph "31" of the Complaint and deny the remaining allegations in paragraph "31" and affirmatively state that OCME maintains an LDIS that contains several indices of DNA profiles, among them a Forensic Index and Subject Index and that comparisons are made of DNA profiles in the Subject Index to other DNA profiles in LDIS generally until the OCME is presented with a court expungement order or the prosecuting agency approves the removal usually following dismissal of the criminal charges or the NYPD recommends removal following its periodic review of DNA profiles and that DNA profiles in the

Forensic Index but not the Subject Index are uploaded to the New York State SDIS and the federal NDIS..

   32. Deny the allegations set forth in paragraph "32" of the Complaint and respectfully refer the Court to the statute and regulations referenced therein for a complete and accurate statement of their meaning and content.

   33. Deny the allegations set forth in paragraph "33" of the Complaint and respectfully refer the Court to the statute referenced therein for a complete and accurate statement of its meaning and content..

   34. Deny the allegations set forth in paragraph "34" of the Complaint and respectfully refer the Court to the statutes referenced therein for a complete and accurate statement of their meaning and content.

   35. Deny the allegations set forth in paragraph "35" of the Complaint and affirmatively state that there are a variety of mechanisms that limit the time that a child's DNA profile remains in LDIS including a court expungement order, approval of removal from the prosecuting agency and a recommendation of removal from the NYPD as part of its periodic review.

   36. Deny the allegations in paragraph "36" of the Complaint and affirmatively state that OCME's Subject Index is subject to the independent oversight of the New York State Commission on Forensic Science and that all of OCME's operations, which include the LDIS which contains the Subject Index, are regularly assessed and accredited by the FBI QAS for Forensic DNA Testing Laboratories, the American National Accreditation Board, and the New York State Forensic Laboratory Accreditation Program.

37. Deny the allegations in the first sentence of paragraph "37" of the Complaint and deny knowledge and information sufficient to form a belief as to the truth of the remaining allegations in paragraph "37" except admit that people regularly shed hair and skin cells which contain DNA and that a person may deposit biological material containing their DNA when they touch an object but that the amount of DNA deposited and the amount of DNA, if any, that can subsequently be recovered, vary greatly depending on numerous factors .

38. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "38" of the Complaint and respectfully refer the Court to the scientific article referenced therein for a complete and accurate statement of its meaning and content.

39. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "39" of the Complaint except admit that a person's DNA contains information about a person's genetic predispositions toward some medical conditions and biological familial relationships and affirmatively state that OCME does not perform testing on the parts of the DNA containing this information,

40. Deny the allegations set forth in paragraph "40" of the Complaint except the admit the allegations in the first sentence of paragraph "40" and affirmatively state that in a criminal matter, for both forensic evidence and subject samples, OCME only uses the parts of the DNA in the 20 "core loci" which have been designated by the FBI as the core loci and the consensus in the relevant scientific community is that no personal information about the individual whose DNA is being analyzed can be obtained from these core loci.

41. Deny the allegations in paragraph "41" of the Complaint except admit that CODIS laboratories are required to analyze non-coding parts of DNA and affirmatively state that

Investigative Genetic Genealogy ("IGG") does not involve the use or identification of any medical or confidential information in DNA .

42.     Deny the allegations set forth in paragraph "42" of the Complaint and affirmatively state that IGG begins with a crime scene DNA extract being provided to a federal agency, such as the FBI, or to one of the two private genetics laboratories in New York State that are certified by the New York State Department of Health to perform IGG analysis, and that the comparison is made between crime scene DNA and DNA profiles of persons who have voluntarily submitted their DNA to a commercial genealogical database and have opted-in to law enforcement searches.

43.     Deny the allegations set forth in the second sentence of paragraph "43" of the Complaint as it is not true in all the circumstances described therein and admit the allegations in the first sentence of paragraph "43."

44.     Deny the allegations set forth in paragraph "44" of the Complaint and affirmatively state that OCME has never provided DNA extract taken from a known person to the NYPD for use in IGG investigations and that the only role OCME has in IGG investigations is to provide the NYPD, upon request, DNA extract from crime scene evidence.

45.     Deny the allegations set forth in paragraph "45" of the Complaint and affirmatively state that the DNA of known persons collected by the NYPD is not used in IGG analysis.

46.     Deny the allegations set forth in paragraph "46" of the Complaint, and affirmatively state that IGG does not involve the use of any medical or confidential information in the DNA and that Plaintiffs' abandonment DNA profiles were not used in an IGG investigation and that Plaintiffs' DNA would only have been used in an IGG investigation if they had voluntarily

submitted their DNA to a commercial genealogical database and opted-in to law enforcement searches.

47. Deny the allegations set forth in paragraph "47" of the Complaint and affirmatively state that only a very small percentage of arrested persons have their DNA samples collected and analyzed from abandonment samples and that DNA profiles are not compared to crime scene DNA profiles once there is a court expungement order, or in almost all cases where the subject requests removal and the criminal charges have been dismissed and there is no on-going criminal investigation or prosecution of the subject, or pursuant to the NYPD's recommendation following its periodic review.

48. Deny the allegations set forth in paragraph "48" of the Complaint except deny knowledge and information sufficient to form a belief as to the allegations concerning Terrell Gillis whose criminal records, according to the allegation are sealed, and affirmatively state that when the DNA of more than one individual is identified at a crime scene then additional evidence must be obtained to determine which individual(s) were participants in the crime and that the same is true for fingerprint evidence.

49. Deny the allegations set forth in paragraph "49" of the Complaint except admit that rank-and-file NYPD officers do not place their DNA in an elimination database, and affirmatively state that OCME does maintain a Lab Types Index within LDIS which contains DNA profiles from, among others, OCME laboratory and other personnel, and NYPD crime scene and crime laboratory personnel and that when crime scene samples contain the DNA of more than one person, OCME can frequently deconvolute the DNA profiles of up to four people.

50. Deny the allegations set forth in paragraph "50" of the Complaint and respectfully refer the Court to the press release containing the announcement referenced therein for a complete and accurate statement of its meaning and content.

51. Deny the allegations set forth in paragraph "51" of the Complaint and respectfully refer the Court to the press release containing the announcement referenced therein for a complete and accurate statement of its meaning and content and affirmatively state that persons who are designated offenders under New York law whose DNA profiles are in LDIS are required to provide their DNA to New York State for analysis and uploading to the State DNA database.

52. Deny the allegations set forth in paragraph "52" of the Complaint and respectfully refer the Court to the press release containing the announcement referenced therein for a complete and accurate statement of its meaning and content and affirmatively state that OCME prominently displays on its public website a statement that members of the public may submit a form to OCME to inquire whether their DNA profile is uploaded into LDIS and there is a link to the form and OCME responds to all such requests.

53. Deny the allegations set forth in paragraph "53" of the Complaint and respectfully refer the Court to the NYPD report of the local DNA Database Review – Audit Completion May 2021, which is available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.nyc.gov/assets/nypd/downloads/pdf/analysis_and_planning/dna/local-dna-database-review-data.pdf-2021-05.pdf for a complete and accurate statement of its meaning and content and which shows that of the 20,460 DNA profiles reviewed, over 68% were profiles of designated offenders, i.e., persons convicted of crimes who are required to submit their DNA sample to New York State for inclusion in the State's DNA

database, 26.4% of the profiles were recommended for removal, 5% were ineligible for removal because the person was a defendant in on-going criminal prosecutions or suspect in an on-going criminal investigation and less than ½ of !% were ineligible for removal because their cases were dismissed based on factors such as witness intimidation, and that Plaintiffs cannot know whether persons in these latter 2 groups have never been convicted of a crime.

54. Deny the allegations set forth in paragraph "54" of the Complaint, and respectfully refer the Court to the NYPD's April 2022 report which provides data as of March 31, 2022, and which is available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.nyc.gov/assets/nypd/downloads/pdf/analysis_and_planning/dna/local-dna-database-review-data.pdf-2022-04.pdf for a complete and accurate statement of its meaning and content and which shows that the growth in the number of individuals whose DNA profiles were in the Subject Index was largely due to an increase in the number of designated offenders from 13,954 to 16,732, which is an increase of 2,778 individuals.

55. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "55" of the Complaint and affirmatively state that Plaintiff Leslie's criminal records arising from this incident have been sealed.

56. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "56" of the Complaint except admit Plaintiff Leslie was arrested and affirmatively state that Plaintiff Leslie's criminal records arising from this incident have been sealed.

57. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "57" of the Complaint and affirmatively state that Plaintiff Leslie's criminal records arising from this incident have been sealed.

58. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "58" of the Complaint except admit that a cup that Ms. Leslie had abandoned was sent by NYPD detectives to OCME for DNA testing and affirmatively state that Plaintiff Leslie's criminal records arising from this incident have been sealed.

59. Admit the allegations set forth in set forth in paragraph "59" of the Complaint, except affirmatively state that the DNA profile that was generated from the abandoned cup is a subject profile.

60. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "60" of the Complaint except admit that ultimately all criminal charges against Plaintiff Leslie were dismissed and affirmatively state that Plaintiff Leslie's criminal records arising from this incident have been sealed and that her DNA profile was uploaded into LDIS where it was compared to other DNA profiles in LDIS until May 13, 2022 and that her DNA profile was removed from LDIS on May 19, 2022, and that in the normal course of the NYPD periodic review the comparison of her DNA profile with other DNA profiles in LDIS would have ceased in or about June 2022.

61. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "61" of the Complaint.

62. Admit the allegations set forth in the first sentence of paragraph "62" of the Complaint, and affirmatively state that Plaintiff Leslie's counsel never subsequently requested that her DNA profile be removed from LDIS and deny knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph "62."

63. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "63" of the Complaint and affirmatively state that Plaintiff Burgos' criminal records arising from this incident have been sealed.

64. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "64 " of the Complaint except admit that Plaintiff Burgos was arrested and affirmatively state that Plaintiff Burgos' criminal records arising from this incident have been sealed.

65. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "65 " of the Complaint except admit that the butt of a cigarette which Plaintiff Burgos had abandoned was sent to the OCME for DNA testing and affirmatively state that Plaintiff Burgos' criminal records arising from this incident have been sealed.

66. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "66" of the Complaint except admit that the criminal charges against Plaintiff Burgos were dismissed and affirmatively state that OCME analyzed Mr. Burgos' DNA from the sample obtained from the abandoned cigarette butt and uploaded the resulting DNA profile into the Subject Index in LDIS where it was compared with other DNA profiles in LDIS and that these comparisons ceased on May 13, 2022 and that his DNA profile was removed from LDIS on May 19, 2022 and that in the normal course of the NYPD's periodic review the comparisons would have ceased in or about January 2023.

67. Deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph "67" of the Complaint.

68. Admit the allegations set forth in the first sentence of paragraph "68" of the Complaint, and affirmatively state that Plaintiff Burgos' counsel never subsequently requested that

15

his DNA profile be removed from LDIS and deny knowledge and information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph "68."

69. Deny the allegations set forth in paragraph "69" of the Complaint, except admit that Plaintiffs purport to proceed as set forth therein.

70. Deny the allegations set forth in paragraph "70" of the Complaint, except admit that Plaintiffs purport to proceed as set forth therein.

71. Deny the allegations set forth in paragraph "71" of the Complaint, except admit that Plaintiffs purport to proceed as set forth therein.

72. Deny the allegations set forth in paragraph "72" of the Complaint, except admit that Plaintiffs purport to proceed as set forth therein.

73. Deny the allegations set forth in paragraph "73" of the Complaint.

74. Deny the allegations set forth in paragraph "74" of the Complaint.

75. Deny the allegations set forth in paragraph "40" of the Complaint.

76. Deny the allegations set forth in paragraph "75" of the Complaint.

<u>AS A FIRST DEFENSE</u>

77. The Complaint fails to state a claim upon which relief can be granted.

<u>AS A SECOND DEFENSE</u>

78. The Defendants actions were lawful and in accordance with all applicable provisions of the United States Constitution, federal laws and regulations, and state and local laws and regulations.

<u>AS A THIRD DEFENSE</u>

79. At all times, Defendants acted in good faith and with a reasonable belief in the lawfulness of their actions.

## AS A FOURTH DEFENSE

80. Plaintiffs lack standing to bring this action.

## AS A FIFTH DEFENSE

81. Plaintiffs' claims are moot.

WHEREFORE, the Complaint should be dismissed and Defendants should be granted such other and further relief as is just and proper.

Dated: New York, New York
       April 14, 2023

>                          HON. SYLVIA O. HINDS-RADIX
>                          Corporation Counsel of the
>                          City of New York
>                          Attorney for Defendants
>                          100 Church Street
>                          New York, NY 10007
>                          (212) 356-2083
>
> By:     /s/
>         Marilyn Richter
>         Assistant Corporation Counsel