

| | | |
|---|---|---|
| **MURIEL GOODE-TRUFANT**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | NICHOLAS R. TAMBONE<br>Assistant Corporation Counsel<br>Phone: (212) 356-8767<br>Email: ntambone@law.nyc.gov |

July 9, 2025

**By ECF**

Hon. Naomi Reice Buchwald
U.S. District Court, Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., Courtroom 21A
New York, NY 10007-1312

**Re:**   *Leslie v. City of New York*, **S.D.N.Y. No. 22-cv-02305-NRB**

Dear Judge Buchwald:

This Office represents Defendants in this action. I write under the Court's Individual Rule 2(C)(1) to provide an overview of the arguments set forth in the City's motion for summary judgment filed today.

### A.   Factual Background

Around 3:10 a.m. on July 3, 2019, NYPD officers arrested Plaintiff Shakira Leslie in the Bronx after finding a loaded gun with a defaced serial number in a car she occupied. Defacing a firearm's serial number makes it hard for police to determine the identity of the firearm's owner; possessing a defaced firearm is a serious crime under both federal and New York state law. Around 10:10 a.m., Leslie was briefly interviewed by detectives and denied knowing that the gun was in the car. During the interview, a detective offered Leslie some water in a disposable cup; after initially declining, she drank from the cup. Then she set the cup back down on the table and left the cup behind when she exited the room.

To aid their investigation of the identity of the defaced firearm's owner, police gave the cup to the Office of the Chief Medical Examiner, a New York City agency that operates independently from the NYPD. OCME retrieved a sample of Leslie's DNA (i.e., her saliva) from the cup, which OCME then used to create a DNA profile using the same process that law enforcement throughout the United States have used for decades. As with all standard DNA profiles used by American law enforcement, that process revealed only two pieces of information about Leslie: (1) her biological sex, and (2) a unique identifying number reflecting her genetic identity. Leslie's DNA profile did not match a DNA profile that OCME created from DNA retrieved from the illegal gun. After that exculpatory result, all charges against Leslie were dropped. The driver of the car, Leslie's cousin, later pleaded guilty to possessing the defaced gun.

Hon. Naomi Reice Buchwald
Page 2

    B.    **Summary of Arguments**

Leslie contends her Fourth Amendment rights were violated when police collected the discarded cup containing a sample of her DNA, when OCME created a DNA profile from the DNA sample, and when OCME indexed her DNA profile for comparison to other DNA profiles. The undisputed facts show that Leslie's claims fail as a matter of law:

*First*, a claimed violation of the Fourth Amendment under the "legitimate expectation of privacy" test requires evidence both that a person manifested a subjective expectation of privacy in the object of the challenged search, and that society would find that privacy expectation to be objectively reasonable. Leslie did not manifest a subjective expectation of privacy in the DNA molecules that she shed into the disposable cup—to the contrary, she candidly testified that she had never thought about her DNA before she was arrested. Courts have rejected Fourth Amendment privacy claims as to DNA evidence on similar facts, based on the litigant's failure to manifest a subjective expectation of privacy.

At any rate, Leslie's privacy claim is not objectively reasonable. The Supreme Court held in *Maryland v. King*, 569 U.S. 435, 464 (2013) that creating a DNA profile from a lawfully obtained DNA sample "did not intrude on [an arrestee's] privacy in a way that would make his DNA identification unconstitutional." The unique identifying number reflected in Leslie's DNA profile revealed nothing private about her—just as a driver's license number reveals no private information about a driver. Although other forms of DNA analysis can reveal more information than a standard DNA profile, none of that hypothetical DNA testing occurred here. Leslie is not the first Fourth Amendment litigant to prop up their privacy contentions by focusing on hypothetical DNA analysis, and hypothetical facts are insufficient to establish a legitimate privacy interest when stacked up to vital, non-hypothetical government interests.

*Second*, OCME's indexing of Leslie's DNA profile for comparison to other DNA profiles does not amount to a "search" under the Fourth Amendment. Leslie's contention—that police need a warrant to compare one DNA profile to another—is wrong and has been repeatedly rejected by federal and state courts. Police routinely maintain and compare records of many different things: electronic databases of fingerprint profiles, photographs of suspects' faces, etc. "[T]he only difference between DNA analysis and the accepted use of fingerprint databases is the unparalleled accuracy DNA provides." *King*, 569 U.S. at 451. Leslie's position would by extension require the FBI to dismantle the Combined DNA Index System (CODIS), which contains 5,879,537 arrestee DNA profiles as of April 2025 and has been unanimously approved of by the many courts to consider its legality over decades.

*Third*, Leslie also raises a state law challenge to OCME's ability to use its Local DNA Index System (LDIS), New York City's local contribution to CODIS, to maintain DNA profiles of people who have not been convicted of a crime. Because this is a novel question of New York state law and unrelated to the Fourth Amendment claim, the Court should decline to exercise supplemental jurisdiction over Leslie's state law claim. Notably, the New York Supreme Court, Appellate Division held in *Samy F. v. Fabrizio*, 110 N.Y.S.3d 26, 34 (App.

Hon. Naomi Reice Buchwald
Page 3

Div. 1st Dep't 2019) that New York law does not bar OCME from using its LDIS in the manner that Plaintiff challenges here.

### C. Conclusion

Defendants' motion for summary judgment should be granted. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). Police did not, as a matter of law, intrude upon Leslie's personal privacy or dignity in this case.

                    Respectfully submitted,

                    */s/ Nicholas R. Tambone*

                    Nicholas R. Tambone
                    Assistant Corporation Counsel

cc:    All counsel of record (by ECF)